COMMONWEALTH *vs.* EDWARD H. LEE.

Suffolk.    October 5, 1949. — November 7, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Practice, Criminal,* Continuance, Examination of jurors, Preliminary question, New trial, Requests, rulings and instructions. *Jury and Jurors. Evidence,* Photograph, Relevancy and materiality, Competency, Cumulative, Admissions and confessions.

On the record, there was no failure by a trial judge to exercise his own individual judgment, nor abuse of discretion, in his denial of a motion by a defendant charged with murder for a continuance to enable him to secure the attendance of a certain witness.

A judge presiding at the trial of an indictment for murder against a colored person having inquired, as prescribed by G. L. (Ter. Ed.) c. 234, § 28, of those called as jurors whether they were conscious of any bias or prejudice, was not required to grant a request by the defendant that he ask them also whether they had any bias or prejudice against a colored person.

At the trial of an indictment for murder of a storekeeper by shooting him in the head during the perpetration of an armed robbery, there was no error in the admission of photographs of the interior of the store showing also the body of the storekeeper lying on the floor, and of a photograph showing his face.

There was no merit in an objection to the admission of evidence really directed to its weight and not to its competency.

No error appeared in a murder case in the exclusion of testimony of the defendant which was merely a repetition of testimony already given by him.

A judge presiding at a murder trial, in submitting to the jury for their determination on all the evidence the question whether an alleged confession of the defendant was voluntary, might properly inform them that on evidence heard by him in their absence he had found the alleged confession to be voluntary but that his finding was not binding on them.

There was no error in a refusal by a judge, hearing a motion for a new trial of an indictment for murder, to consider certain grounds relating only to matters which were or could have been raised at the trial.

On the record, there was no error nor abuse of discretion in the denial of a motion for a new trial of an indictment for murder grounded on alleged derogatory remarks concerning the defendant made by a relative of the victim in the court room during the trial and an alleged "commotion" created by the defendant as a result of the remarks.

After full and correct instructions to the jury concerning their dealing with an alleged confession of the defendant at a murder trial, the defendant was not entitled as of right to an instruction that "Evidence of an oral or verbal confession of the defendant is to be received with great caution. You should take into consideration that the mind of the defendant himself may be oppressed by the calamity of his situation, and that he is often influenced by motives of hope or fear to make an untrue confession."

INDICTMENT for murder, found and returned on January 14, 1948.

The case was tried in the Superior Court before *O'Brien,* J.

*L. W. Edwards,* for the defendant.

*F. T. Doyle,* Assistant District Attorney, for the Commonwealth.

RONAN, J. Nathan Binder, the proprietor of a haberdashery on Columbus Avenue in Boston, was shot and killed in his shop between one and one thirty o'clock on the afternoon of November 17, 1947. Photographs were taken of the interior of the store by the police who arrived soon after the commission of the crime. A cartridge shell was found on the floor about five feet from the body. The drawers of the cash register were open and contained only a few pennies. The bullet which caused the death was later removed from the victim's skull by the medical examiner and

turned over to the police. The defendant was arrested about eleven o'clock on the evening of November 27, 1947, Thanksgiving day. An unloaded automatic revolver of German make and a clip containing four cartridges of a certain manufacture were found in his pockets.

There was evidence that this revolver, the clip of cartridges, and a rifle had been stolen on November 9, 1947, from the laundry of one Yee; that the shell found on the floor of Binder's shop was of the same manufacture as the cartridges found on the defendant at the time of his arrest; and that the bullet which killed Binder came from this shell and was discharged from the revolver which the defendant had when arrested. There was also testimony that the defendant was a substitute cook on a Pullman diner; that he had signed up for work at eight thirty o'clock on the morning of November 17, 1947; that he spent the rest of his time up to twelve forty-five in the afternoon drinking with others in various taverns in the general vicinity of Binder's shop; that he reported to the railroad office at a little after two o'clock and was assigned to a train to Albany which left Boston at four fifty o'clock in the afternoon; and that he arrived in Boston on November 18, 1947, on the return trip of this train.

He was interrogated by the police subsequent to his arrest and made conflicting statements, and finally stated that he committed the homicide. He contended that he was induced to make these statements and his acknowledgment of guilt by coercion and fear generated by the police. The judge after hearing the evidence found that the statements were voluntarily and freely made, and permitted them to be introduced in evidence.

The defendant was convicted of murder in the first degree and has appealed, assigning various errors of law.

The first assignment of error is based upon the denial of a motion for a continuance in order to enable the defendant to secure the attendance of one Davis as a witness. The defendant contends that he was given the revolver by Davis a few hours before the defendant's arrest and was to re-

turn it to Davis the following morning. He made such a statement to the police following his arrest, and a thorough but unsuccessful search was conducted by the police to locate Davis up to a time when the defendant changed his story and stated that he had obtained the revolver when he broke into and entered the Chinese laundry. Counsel was originally assigned in January, 1948, and present counsel was assigned on March 15, 1948. The trial commenced on May 24, 1948. So far as appears, there is nothing to show what Davis would testify to if he were called as a witness, or that his testimony would be of any benefit to the defendant. Neither does it appear from the evidence that counsel for the defendant had made any effort to locate Davis or to obtain a statement from him. There was nothing to indicate when Davis might be located or, if he were, that he would ever be called as a witness by the defendant. In these circumstances, it cannot be said that there was any abuse of sound judicial discretion in refusing to continue the trial. See *Commonwealth* v. *Drake,* 124 Mass. 21, 24; *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 16; *Commonwealth* v. *Friedman,* 256 Mass. 214, 216; *Commonwealth* v. *Soaris,* 275 Mass. 291, 297. There is nothing in the contention that the trial judge in denying the motion was merely following the decision of the Chief Justice of the Superior Court who denied a similar motion previous to the trial, and that the judge did not exercise his own individual judgment in refusing to grant a continuance. *Commonwealth* v. *Dyer,* 243 Mass. 472, 507. *Commonwealth* v. *Dies,* 248 Mass. 482, 488.

The second assignment of error is to the refusal of the judge during the examination of those called as jurors to inquire whether they had any bias or prejudice against one who was a member of the colored race. The defendant was a colored man. The judge had inquired of each prospective juror if he was conscious of any bias or prejudice, and all who were selected answered the inquiry in the negative. The inquiry put to the prospective jurors was broad enough to include the inquiry proposed by the defendant. The

judge was not required to grant the request, and it cannot be said that, having inquired of the persons called as jurors concerning all the matters prescribed by G. L. (Ter. Ed.) c. 234, § 28, [1] there was any abuse of discretion by the judge in refusing to put the additional inquiry. *Commonwealth* v. *Poisson,* 157 Mass. 510, 512. *Commonwealth* v. *Millen,* 289 Mass. 441, 475. *Commonwealth* v. *DiStasio,* 294 Mass. 273, 280.

The third assignment of error presents the question whether there was error in the admission of four photographs of the interior of the store which were taken shortly after the murder and a fifth photograph showing the face of the victim. The four photographs showed the body lying on the floor, various pools of blood, the show cases, and many other articles which were frequently mentioned in the testimony. The specific objection to all these photographs was that they tended to arouse the emotions of the jury to the prejudice of the defendant, and that, as the Commonwealth was not seeking a conviction on the ground that the murder was committed with atrocity and extreme cruelty, the photographs ought not to have been admitted in evidence. We cannot say, however, that they did not assist the Commonwealth in its contention that murder in the first degree was committed in the perpetration of armed robbery. The four photographs could doubtless be found to aid the jury in understanding better the oral testimony describing the interior arrangement of the store and the relative position of the various fixtures, the position of the body, and other details of the scene of the homicide. The fifth photograph could be found to be of assistance to the jury in considering the testimony of the medical

---

[1] This section is as follows: "Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein; and the objecting party may introduce other competent evidence in support of the objection. If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead." The usual forms of statutory questions to persons called as jurors are shown in *Commonwealth* v. *Spencer,* 212 Mass. 438, and *Commonwealth* v. *Cero,* 264 Mass. 264.

examiner. All the photographs could be found to possess evidential value material to the issue then being tried. There was no abuse of discretion in admitting them. *Blair* v. *Pelham,* 118 Mass. 420. *Commonwealth* v. *Robertson,* 162 Mass. 90, 97. *Commonwealth* v. *Tucker,* 189 Mass. 457, 476. *Commonwealth* v. *Noxon,* 319 Mass. 495, 536– 537. *Commonwealth* v. *McGarty,* 323 Mass. 435, 438–439. *Commonwealth* v. *Pike, ante,* 335, 338.

The fifth assignment of error is directed to the admission of the testimony of one Brooks that the defendant had offered to sell him the revolver before Thanksgiving day. When shown the revolver which had been taken from the defendant at the time of his arrest, Brooks testified that "it looks like it." The defendant also excepted to the refusal of the judge to strike out the conversation between Brooks and the defendant on the ground that the testimony of Brooks was insufficient to establish the identity of the revolver. The evidence was competent and its weight, which is really the basis of the objection, was for the jury. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 133. *Commonwealth* v. *Kennedy,* 170 Mass. 18, 24. *Commonwealth* v. *Sacco,* 255 Mass. 369, 430, 431. *Commonwealth* v. *Galvin,* 323 Mass. 205, 215.

The sixth assignment of error is to the exclusion of the testimony of the defendant that shortly prior to November 17, 1947, he had been confined in a hospital. He testified that he worked regularly after his discharge from the hospital where he had been confined for six days, and that he was susceptible to headaches. The short answer to the refusal to permit him to show when he was discharged is that he had already testified that he was discharged on October 30, 1947. See *Commonwealth* v. *Chance,* 174 Mass. 245, 249.

The seventh assignment of error is based upon the fact that the judge in the course of his instructions to the jury told them that on the evidence which he had heard in the absence of the jury he had found that the confessions of the defendant were voluntarily made, but that his finding was

not binding upon the jury, and that it was for them to decide upon all the evidence whether they were voluntary. The single contention of the defendant is that the judge should not have stated his preliminary finding of fact.

The judge adopted the humane practice well established in this Commonwealth, after finding that the confessions were voluntarily made, of leaving that question finally to the jury, thus giving the defendant a second opportunity to have the confessions excluded if the essential factors for their admission were found to be lacking. *Commonwealth* v. *Preece,* 140 Mass. 276, 277. *Commonwealth* v. *Sherman,* 294 Mass. 379, 394. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 604. *Commonwealth* v. *Galvin,* 323 Mass. 205, 215. A substantially similar practice prevails with reference to the admission of dying declarations. It was said in *Commonwealth* v. *Bond,* 170 Mass. 41, 43, in discussing the procedure governing the admissibility of confessions, that "In regard to confessions, statements made in contemplation of death and the like, where there is a preliminary question of fact to be decided in order to determine the admissibility of the evidence in a criminal case, the practice is well settled in this State. The judge finds the fact in the first instance. If he is of opinion that the confession was not voluntary, or that when the declaration was made the speaker expected to recover, or, in general, that the preliminary facts were not such as to make the evidence admissible, he rejects it, and that is the end of the matter unless some question of law is reserved. . . . If he finds the other way and is of opinion that the evidence is admissible, he admits it, but instructs the jury to disregard it if they do not agree with him." In considering the admissibility of a dying declaration, it was said in *Commonwealth* v. *Polian,* 288 Mass. 494, 498, with an ample citation of authorities, that after the judge has made a preliminary finding admitting a confession or a dying declaration, the whole matter is left to the jury, and that they reject the confession or declaration if they do not find the facts necessary to *its* admission. In other words, the practice on the admission of both kinds of evi-

dence is governed by the same rule of procedure, and the duties of the judge and the jury are the same in both cases.

In *Commonwealth* v. *Cantor*, 253 Mass. 509, 512, the question now presented arose with reference to a dying declaration. The error there claimed was that the judge in instructing the jury stated that he found that the declaration was made by one who had given up all hope of recovery. It was held that "Where the law requires a judge to make a preliminary finding of facts it is proper for him to state his finding to the jury," and that he may so inform the jury during the trial or in the charge. It is difficult to see, the practice being the same in both instances, why, if a judge can properly inform the jury as to his finding of the preliminary fact in the case of a dying declaration, he cannot do so in the case of a confession. We think the case at bar is governed by the case last cited, and that there was no error in this respect in the instructions.

The ninth and tenth assignments relate to the refusal to allow the motion for a new trial. The first and second grounds were waived. The judge properly refused to consider any of the grounds numbered three to thirteen, inclusive, as they set forth matters which arose during the trial and related to points which were saved or could have been saved at the trial. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24. *Commonwealth* v. *Osman*, 284 Mass. 421, 426. *Commonwealth* v. *McKnight*, 289 Mass. 530, 544. *Commonwealth* v. *Gricus*, 317 Mass. 403, 406. *Commonwealth* v. *Bellino*, 320 Mass. 635, 645, 646. *Commonwealth* v. *Galvin*, 323 Mass. 205. *Commonwealth* v. *Blondin*, ante, 564, 566, 567.

The fourteenth and succeeding grounds related to the alleged misconduct of a relative of Binder in making derogatory remarks in a whispering voice concerning the defendant in the court room during the trial, which resulted in the defendant creating "a commotion." The judge was not required to believe the statements to this effect contained in an affidavit. There was nothing to show what the "commotion" consisted of if in fact it occurred. The

judge was in a position to determine whether there was any disturbance and what effect, if any, it might have had on the defendant's rights. During the argument on the motion his counsel stated that he had no evidence that any of the jurors heard any of the remarks of the relative and it is possible that none of them heard the remarks. Relative to an outburst of applause made by the spectators in a court room during a trial where it was contended that the applause was expressive of public sentiment hostile to a defendant, after pointing out that the applause might be expressive of something else, it was said in *Commonwealth* v. *Millen*, 289 Mass. 441, 460, 461, that "It is not to be presumed that the jury were in any way influenced by it, and there is nothing in the record to show that they were in fact influenced, or likely to be influenced, in the discharge of their impartial duties by this episode." The denial of the motion for a new trial with respect to these grounds does not constitute error. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25. *Commonwealth* v. *Millen*, 290 Mass. 406, 408. *Commonwealth* v. *Coggins*, *ante*, 552, 555.

The eighth assignment is based upon the denial of the fourth request, that "Evidence of an oral or verbal confession of the defendant is to be received with great caution. You should take into consideration that the mind of the defendant himself may be oppressed by the calamity of his situation, and that he is often influenced by motives of hope or fear to make an untrue confession." The jury were fully instructed to disregard the confessions unless they were found to be voluntary, and various matters were brought to their attention to aid them in deciding whether they were freely made or resulted from fear, coercion or any other factor that would warrant their rejection. If found to be voluntary, the weight to be accorded to them rested with the jury. The defendant was not entitled as matter of law to the instruction requested. *Commonwealth* v. *Howard*, 205 Mass. 128, 154. *Commonwealth* v. *Polian*, 288 Mass. 494, 499. *Commonwealth* v. *Sherman*, 294 Mass. 379, 394, 395.

The evidence, comprising more than one thousand pages, has been carefully examined, and all the alleged errors urged by the defendant have been considered, in order to determine whether the verdict was against the law and the evidence or whether justice requires a new trial. G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341. *Commonwealth* v. *Bellino*, 320 Mass. 635, 645, 646. *Commonwealth* v. *White*, 323 Mass. 323. We discover no reason for setting aside the verdict.

*Judgment affirmed.*