**STATE of Missouri, Respondent,**

v.

**Peter Festus BRIDGES, a/k/a Festus Bridges, a/k/a Peter Festus Bridges, a/k/a Peter Fester Ell, Appellant.**

No. 48323.

Supreme Court of Missouri,

Division No. 2.

Sept. 11, 1961.

 

Charles M. Shaw, Clayton, for appellant.

Thomas F. Eagleton, Atty. Gen., George E. Schaaf, Sp. Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant was found guilty of murder in the first degree as charged in the information and his punishment was assessed at imprisonment in the penitentiary during the remainder of his natural life. His motion for new trial was overruled and he was sentenced in accordance with the verdict of the jury. The trial court sustained the defendant's motion to appeal as a poor person and the transcript of the record was furnished at state expense in accordance with § 485.100, RSMo 1949, V.A.M.S.

■ The defendant was represented at the trial by able counsel, but no brief has been filed in this court on the defendant's behalf. The case is before us on the transcript of the record and the brief of the respondent. In this situation our review extends to the assignments of error properly preserved in the defendant's motion for a new trial and the essential portions of the record. S.Ct. Rules 27.20 and 28.02, V.A. M.R.; State v. Slicker, Mo., 342 S.W.2d 946, 947[1].

There are five assignments of error in the motion for new trial, all of which relate to the admission of evidence. In general they charge that the court erred in permitting the state to prove an exculpatory denial of the defendant, in admitting in evidence oral and written confessions of guilt, and in permitting the state to prove in rebuttal prior convictions of the defendant. Since the sufficiency of the evidence is not challenged, our statement of facts will be restricted to those necessary to an understanding of the issues involved.

Herman E. Haas and his wife Alice lived at 159 Edgar Road in the City of Webster Groves, St. Louis County, Missouri. Living with them were their two sons and William Cecil Giles, a brother of Mrs. Haas. At about 11 a. m. on October 12, 1959, their nine-year-old son David came home and found the bodies of his mother and his uncle on the basement floor in pools of blood. David ran to the house of a neighbor who notified Mr. Haas who was at his place of employment. When Mr. Haas and others arrived at the home, it was ascertained that both Mrs. Haas and Mr. Giles had been killed by multiple stab wounds.

The defendant, whose age was variously given from 48 to 55, had been employed by Mr. Haas as a handyman to do work around the home and elsewhere. He was known to some of the neighbors. On the morning in question, he was seen on the Haas's premises by Mrs. Regan, one of the neighbors, and her son Mark shortly before the bodies were discovered. At the request of the Webster Groves Police Department, the defendant was arrested by St. Louis City police at about 8 p. m. on the day the murders were committed. He was held by the St. Louis police as a fugitive for the Webster Groves Department. First he was taken to the 12th District Police Station in St. Louis. The Webster Groves Department was notified and two members of that force came to the station about an hour after the defendant was arrested. They and St. Louis policemen interrogated the defendant and investigated his answers. Early the next morning the defendant was transferred to the Central District Police Headquarters where he was questioned further and, with his consent, was given a polygraph test early in the afternoon of October 13. He was then processed and

turned over to the Webster Groves Police Department at 3:30 p. m.

At the Webster Groves Police Headquarters the defendant was interrogated further. At about 5:30 p. m. on that day, October 13, he orally confessed that he had killed both Mrs. Haas and Mr. Giles. The coroner of St. Louis County then took a written statement from the defendant in question and answer form. The defendant signed the written confession and initialed each page. In his oral and written confessions, the defendant stated that he lured Mr. Giles into the basement of the Haas's home and killed him by stabbing him with a butcher knife because Mr. Giles had taken jobs away from the defendant; when Mrs. Haas came into the basement and discovered him in the act of killing Mr. Giles, the defendant knocked her to the floor and stabbed her to death in order to silence her as a witness. The defendant pleaded not guilty and undertook to prove an alibi. He and a Mrs. Martha McKinley testified that the defendant was in her home near the time the murders were committed. Additional evidence will be developed in connection with the questions presented.

The defendant's first assignment of error is that the trial court erred in permitting Lieutenant Emmett Potthoff of the Webster Groves Police Department "to testify to an exculpatory denial of the defendant" over the defendant's objection. Lieutenant Potthoff testified in substance that he questioned the defendant at the 12th District Police Station on the evening of October 12 and the defendant told him that he had not been in Webster Groves that morning or any time that day; that about 7 a. m. he went to Bud Brown's place on North Broadway; that Brown and he picked up 200 bags of feed in South St. Louis and delivered it to Sparta, Illinois; and that he, the defendant, did not get back to St. Louis until sometime after noon. The defendant's later statements and testimony were that he was in St. Louis all day. His later declarations also conflicted in other minor details with what he told Lieutenant Potthoff. Witnesses contradicted the defendant's declaration that he was not in Webster Groves on the day the crimes were committed. The defendant's denial that he was in Webster Groves was a part of the same transaction and was a corollary of his claim that he was elsewhere.

■ The state is not limited to proof of inculpatory declarations of the defendant since self-serving statements are also admissible where they tend to show a consciousness of guilt and a desire or disposition to conceal the defendant's criminal agency. The general rule of broader application is thus stated in State v. Walker, 357 Mo. 394, 208 S.W.2d 233, 236[1]: "The general rule is that acts, conduct, and declarations of the accused occurring after the commission of an alleged offense which are relevant and tend to show a consciousness of guilt, or a desire or disposition to conceal the crime, are admissible in evidence." See also State v. Cade, 326 Mo. 1132, 34 S.W.2d 82, 85[16, 17]; State v. Hardin, 324 Mo. 28, 21 S.W.2d 758, 761[4]; and State v. Daly, 210 Mo. 664, 109 S.W. 53, 56. 22A C.J.S. Criminal Law § 738, pp. 1094–1095, has this comprehensive statement which includes other facets of the rule: "Self-serving statements made by or for accused out of court, explaining suspicious circumstances, may be proved against him, and their falsity may then be shown. The fact of their falsity admits them as indicating an attempt to explain away incriminating circumstances by falsehoods. Where accused testifies, his self-serving statements contradicting his testimony, may be shown. It may be shown also that accused made two or more conflicting statements out of court in reference to an incriminating fact; and this right is not affected by the fact that accused does not become a witness. Inconsistent statements relevant to the crime charged are not limited to use for impeachment purposes; they have substantive effect as tending to show a consciousness of guilt." The assignment of error is denied.

The next three specifications in the motion for new trial charge that the court erred in admitting in evidence testimony of defendant's oral confession of guilt and his written confession which was state's Exhibit 12 in that the confessions were not voluntary, thereby violating defendant's right against self-incrimination contrary to § 19, Art. I, Constitution of Missouri, V.A.M.S., and his right to due process of law as guaranteed by § 10 of Art. I, Constitution of Missouri, and the Fourteenth Amendment to the United States Constitution. These assignments will be treated together.

Prior to the admission of the confessions in evidence, an interlocutory hearing was held out of the presence of the jury. The trial court ruled that the confessions were not, as a matter of law, inadmissible The fact issue was submitted to the jury under an instruction that the confessions should be given such probative value as the jury believed they deserved if the jury found that the confessions were voluntarily given.

The evidence in this regard further shows that the defendant made an oral confession to Webster Groves policemen before 5:30 p. m. on October 13. The written confession was thereafter taken by the coroner. The oral confession as testified to by Sergeant Otto Piffel of the Webster Groves Police Department was as follows:

"Q. (By Mr. McSweeney) Just tell us what he said, your best recollection of it. A. He said that he went to the home at 159 Edgar Road and he saw Mr. Giles working in the driveway and this made him very angry, so he went to the back, to the kitchen door, which is to the back of the house, and he called to Mrs. Haas that he had come for his shoes, and Mrs. Haas said that his shoes are downstairs, and with this, she turned and walked back toward the living room. He had the screen door open and took a knife from the kitchen table and he then went back outside and entered the basement through the basement entrance. Then he had to think

of a reason to get Mr. Giles into the basement. So, due to the fact that there was some lumber and things disarranged in the basement, he asked Mr. Giles to come help him find his shoes, that he couldn't find them. Mr. Giles entered the basement and an argument started over taking of his job. Mr. Giles started toward the tool shed closet which has a lock on it; at this time he stuck the knife in Mr. Giles' back. Then Mr. Giles fought and he stuck the knife in him again and held the knife into him until they struggled over to the northwest corner of the basement where he fell. And as Mr. Giles continued to holler, he stuck him several more times with the knife. Then Mrs. Haas came down the basement steps and he hit her—his expression was 'a backhand left'—then he knew that she was the only witness to it, so he stuck her with the knife, also."

The defendant further told Sergeant Piffel that he left through the basement entrance, the same way that he came in, that he washed the knife and his hands on an outside faucet, then trotted to the bus line, took a bus back to St. Louis, and as the bus crossed a bridge on Summit Avenue he threw the knife away.

The written confession covers 26 pages of the transcript of the record and is in much greater detail than the oral confession, but the essential elements are the same. The written confession concludes with this statement: " 'This statement of seventeen pages has been read to me completely and corrected by hand where it was in error. This page is being signed and the other pages initialled by me, Peter Ell Bridges, without any threats having been made against me or promises of immunity made to me. Peter Ell Bridges.' " The written confession was witnessed by seven persons including the coroner, two reporters and members of the Webster Groves Police Department.

One ground of objection to the confessions was that the defendant was "questioned in excess of 20 hours". Presumably, the purpose is to charge a violation of § 544.170, RSMo 1949, V.A.M.S., since the defendant's own testimony shows the questioning was done intermittently. The defendant was held by the St. Louis police less than 20 hours before he was turned over to the Webster Groves policemen. The latter then had him in custody approximately six hours without formal charges of which about four hours were required for the interrogation for the written confession, its transcription, reading and signing. Whether the statute was violated in these circumstances has not been briefed and we shall assume without deciding that the custody was continuous. The fact that a peace officer violates a statute by holding a person in excess of the time provided by law without charging him with a criminal offense, does not, as a matter of law, render the prisoner's confession involuntary. State v. Lee, 361 Mo. 163, 233 S.W.2d 666, 668[1]; State v. Smith, Mo., 310 S.W.2d 845, 851[8, 9], certiorari denied 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231; State v. Barnett, Mo., 338 S.W.2d 853, 857. This ground of objection is denied.

The additional grounds upon which the defendant rests his contention that the confessions were involuntary are "that the defendant is a Negro with one or two years of education who is suffering from mental debilitation and who suffers from delusions" and "that defendant was emotionally unstable and suffering from schizophrenic reactions, paranoid type". The state's evidence tended to prove that the prisoner was not abused or coerced, either physically or mentally, and that his confessions were voluntary. There was evidence that the defendant's formal education was limited to one or two years of grade school which is reflected in his grammar and choice of words. On the other hand, his testimony on the interlocutory hearing and before the jury evinces considerable native intelligence and understanding as well as experience.

As to the defendant's mental condition, a psychiatrist, who had examined the defendant for a period of two hours under appointment by the court, testified on behalf of the defendant at the interlocutory hearing that the defendant was a "schizophrenic reaction, chronic, undifferentiated type"; that he did not know the difference between right and wrong; and that he had a "dull normal intelligence". On the other hand, a psychiatrist who had observed him over a period of 16 years while the defendant was incarcerated in the Illinois State Prison at Menard from 1943 to January 14, 1959, testified that there was nothing whatsoever schizophrenic about the defendant; that he had a psychopathic personality with criminal tendencies, but that he "knew the difference between right and wrong, was able to conduct his affairs, if he so willed". This doctor had also examined the defendant once since he was released from the Illinois prison in January 1959 and it was the doctor's opinion that the defendant's mental condition was as he described it when Mrs. Haas was killed on October 12, 1959. This was the general import of the medical testimony, but the defendant did not interpose a defense of insanity and the medical testimony was not reoffered in the presence of the jury.

The substance of the defendant's testimony bearing upon the voluntariness of his confession was that he was not given food or drink from the time he was arrested at 8 p.m. on October 12 until after his confession was signed the next evening; that the officers questioning him swore at him and told him he was lying; that a police officer at the Webster Groves station gripped his shoulder blade at his neck and swore at him; that another officer at Webster Groves jumped on the table and threw at him pictures of the slain couple on the basement floor in pools of blood; that the pictures fell at his fingertips whereupon he started to cry, screamed and thereafter said that he killed them. The officers admitted the pictures were shown to the defendant but denied they were thrown at him or that any-

one jumped on the table. The defendant testified he had been drinking whiskey with his uncle before he was arrested at 8 p. m., but he did not say whether he had eaten that evening. There were no facilities for feeding prisoners at the 12th District Station, but there were at Headquarters or Central District where the defendant was taken before breakfast on October 13. There was drinking water in the cell where the defendant was confined and he did not testify that he requested either food or drinking water and was refused. By the defendant's own testimony, he was not questioned continuously but was returned to his cell between sessions of questioning at the 12th District, Central District, and in Webster Groves. The defendant admitted he told the coroner the things that were in the written confession, but said he made them up and they were not true. He said the reason he made up the story was to prove that he "loved these peoples and that they loved me."

■ The state's evidence tended to prove that the confessions were voluntarily given and the testimony on behalf of the defendant at most created an issue of fact which was properly submitted to the jury. State v. Barnett, Mo., 338 S.W.2d 853, 856[2]; State v. Falbo, Mo., 333 S.W.2d 279, 285 [6]; State v. Smith, Mo., 310 S.W.2d 845, 851[8], certiorari denied 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231; State v. Pierce, Mo., 236 S.W.2d 314[3]; State v. Sanford, 354 Mo. 998, 193 S.W.2d 37, 38[2], certiorari denied 328 U.S. 873, 66 S.Ct. 1373, 90 L.Ed. 1642. The defendant was accorded due process of law and his rights against self-incrimination were not violated. The trial court did not err in admitting the confessions in evidence.

■ The defendant's final complaint is that the trial court erred in permitting the state to introduce as rebuttal evidence records of prior convictions and prison records of the defendant. These records tend to show that the defendant on October 13, 1942, was sentenced by the Circuit Court of Alexander County, Illinois, on conviction of the crimes of assault to murder and robbery, to concurrent terms of one to fourteen and one to twenty years, and that he was received in the State Penitentiary at Menard on October 15, 1942, and discharged therefrom on January 14, 1959. The defendant's first objection to this evidence is that he "did not open the door to this testimony." The defendant took the witness stand in his own defense, and when he did so he, as any other witness, exposed himself to proof of his criminal record for the purpose of affecting his credibility as a witness. Section 491.050, RSMo 1949, V.A.M.S.; State v. Hacker, Mo., 214 S.W.2d 413, 416 [7]; State v. McBride, Mo., 231 S.W. 592, 593[3].

■ The defendant also contends that the records of convictions were not proper rebuttal because testimony concerning past convictions was elicited by the state on cross-examination of the defendant. It is true that the defendant admitted on cross-examination that he was convicted of assault with intent to murder in Illinois in 1933, but he denied that he was convicted in Illinois in 1942 of the crimes of intent to murder and robbery. In these circumstances it was perfectly proper for the state to prove in rebuttal that the defendant had in fact been convicted in 1942. Where a defendant on cross-examination denies a previous conviction or evades or equivocates with reference to it, the record of the conviction is properly admissible in rebuttal of his testimony. State v. Barnholtz, Mo., 287 S.W.2d 808, 811[3]; Hoover v. Denton, Mo., 335 S.W.2d 46, 48[3]; State v. Wolfe, Mo., 343 S.W.2d 10, 14[6]. The court did not err in overruling the objection of the defendant to the admission of this evidence.

The defendant was on trial for the murder of Mrs. Haas only, but he was permitted, without objection, to develop matters which would have been more appropriate in his prosecution for the murder of Cecil Giles. Much of the 769-page transcript deals with the relationship between Giles,

the defendant, and others when they were working on a farm owned by Bud Brown near Sparta, Illinois. Such evidence tended to show cause for resentment on the defendant's part against Giles and Brown but had little, if anything, to do with the murder of Mrs. Haas. The court guarded with meticulous care the legal rights of the defendant; he was accorded a fair trial.

We have considered all of the specifications of error contained in the motion for new trial and find them to be without merit. The transcript of the record contains all matters required to be shown by S.Ct. Rule 28.08. We have also examined the parts of the record designated in S.Ct. Rule 28.02 and find them to be in proper form and free from error.

Accordingly the judgment is affirmed.

All concur.