James William **STIDHAM**, Appellant,

v.

Harold R. **SWENSON**, Warden,
Appellee.

No. 20685.

United States Court of Appeals,
Eighth Circuit.

May 24, 1971.

Rehearing Denied June 8, 1971.

Gibson, Circuit Judge, dissented and filed opinion.

James W. Stidham, pro se.

John C. Danforth, Atty. Gen., Jefferson City, Mo., and Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before GIBSON, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

On September 22, 1954, an inmate of the Missouri State Penitentiary was beaten and stabbed to death by fellow inmates during a riot in that institution. An investigation was undertaken by the prison authorities immediately after the quelling of the riot. Written confessions were eventually obtained from several inmates, including James William Stidham. Stidham's confession was used against him in his 1955 trial in state court in which he was convicted of first degree murder.

Stidham made a number of attempts to obtain relief in Missouri courts on the ground that the trial judge did not find his confession to be voluntary, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964),[1] before submitting it to the jury. State v. Stidham, 305 S.W.2d 7 (Mo.1957); State v. Stidham, 415 S.W. 2d 297 (Mo.1967); State v. Stidman, 449 S.W.2d 634 (Mo.1970). He was unsuccessful in each attempt.

On November 9, 1970, a habeas corpus petition brought by Stidham was denied by the United States District Court for the Western District of Missouri. The District Court found (1) that the trial court which initially tried Stidman had

---

1. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), is retroactively applicable. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Parker v. Sigler, 413 F.2d 459 (8th Cir. 1969), rev'd on other grounds, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970).

complied with *Jackson*, and (2) that on the basis of the undisputed facts adduced at the state trial and the subsequent state evidentiary hearing, the confession was voluntary. Stidham appeals from the denial.[2]

### COMPLIANCE WITH JACKSON

At the initial trial, the state court heard evidence outside the presence of the jury on the voluntariness of the confession. At the conclusion of the hearing, the trial court stated:

" * * * [I]t is the Court's opinion that the matters concerning the statement should be offered in the presence of the Jury, subject of course to any attacks as to its credibility by the Defendant. The Defendant has of course the right to proceed to challenge the voluntariness of the statement and confession, even before the Jury, but it is the Court's opinion that upon the evidence that has been offered before the Court and outside of the hearing of the Jury, that the statement is and should be admissible in evidence, subject to further examinations of the witnesses which might be conducted * * *.

"MR. HENNELLY [Defendant's counsel]: In other words, the Court is overruling my Motion, and request of the Court to hold as a matter of law, that those statements were involuntary, is that right?

"THE COURT: That is right. * * * "

The United States District Court found that this ruling comported with the requirements of Jackson v. Denno, *supra*, stating:

"It would be highly technical, in this day and age, to hold that the word 'voluntary' was a word of art and, in its absence, a conviction by a jury, after a long trial, should be set aside because the judge ruled the statement not involuntary instead of ruling that the statement was voluntary. It is the opinion of this Court that the statements and action of the judge does clearly indicate a finding of voluntariness, and is sufficient under the teachings of Jackson v. Denno, supra, and Sims v. Georgia, [385 U.S. 538, 87 S. Ct. 639, 17 L.Ed.2d 593 (1967)]."

We believe that the District Court's analysis is incorrect. It assumes that Missouri law, at the time of Stidham's trial, required the trial court to find that a confession was voluntary before permitting it to be considered by a jury. Our examination of the Missouri case law convinces us that a trial court had and frequently used the right to submit the question of voluntariness to the jury without a prior determination that the confession was voluntary.

The following statements of the pre-Jackson-Denno Missouri procedure support this view:

" * * * [W]hen there is substantial conflicting evidence and the question is close it is better to refer the underlying issue of voluntariness to the jury than to exclude the confession, since there is less chance of a miscarriage of justice by leaving the question open to a second determination, before the jury on a rehearing of the evidence under proper instructions, than by foreclosing the inquiry. The court then can still exclude the confession if it finds from all the evidence, including that introduced at the preliminary hearing, that the same was involuntary. * * * "

State v. Gibilterra, 342 Mo. 577, 116 S. W.2d 88, 94 (1938).

2. Stidham also contends on appeal that he was denied assistance of counsel at two critical stages of his trial, that he was tried and convicted on a charge not included in his indictment and that the State of Missouri knowingly used the perjured testimony of two convicts in obtaining his conviction. We affirm the decision of the District Court on each of these issues for the reasons given in that court's memorandum opinion. Stidham v. Swenson, Civ.No. 18121–2 (W.D.Mo. May 15, 1970).

"It is my view that we should adhere to the standard of admissibility of confessions of whether or not the particular confession is voluntary in fact. That has always been the rule of this Court. \* \* \* [T]his is a jury question unless its involuntary character so conclusively appears that it must be held to be involuntary as a matter of law. \* \* \* If the confession is voluntary in fact, and is true, the defendant's rights are not violated by putting it in evidence. Some one must determine these fact issues, and our system is to leave them to the jury, when they must be decided on conflicting evidence." (Citations omitted.)

State v. Sanford, 354 Mo. 998, 193 S.W. 2d 37, 38 (1946) (concurring opinion).

" \* \* \* Under our system of jurisprudence it is generally left to the jury to determine whether a confession was voluntary, unless the contrary appears so conclusively that the confession must be held involuntary as a matter of law. \* \* \* " (Citations omitted.)

State v. Laster, 293 S.W.2d 300, 304 (Mo.1956).[3]

■ ■ Our analysis of the record of Stidham's trial leads us to conclude that the trial judge in this case submitted the voluntariness issue to the jury without making a prior factual determination that the confession was voluntary. His finding, that the confession was not "involuntary as a matter of law," was not, under the then existing Missouri law, the same as finding that it was voluntary. If the trial judge does not make a *factual* determination that a confession is voluntary before submitting it to the jury, *Jackson* standards are violated. Parker v. Sigler, 413 F.2d 459 (8

Cir. 1969), rev'd on other grounds, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970).

The Missouri Supreme Court's treatment of this issue on Stidham's appeals buttresses our view that the requirements of *Jackson* were not met. In its first *Stidham* opinion, 305 S.W.2d 7 (1957), the court stated:

"There is no merit in defendant's contention that his written confession was coerced and involuntary and was admitted in evidence before the State established that it had been voluntarily given. The court conducted a full preliminary hearing on the issue, *found the issue was for the jury, and later, after hearing the evidence before the jury, submitted the issue to the jury for determination.* \* \* \* On the conflicting showing the issue of the voluntariness of the confession was for the jury. \* \* \* " (Emphasis added.)

In its most recent *Stidham* opinion, 449 S.W.2d 634 (1970), the Missouri Supreme Court examined its procedure and determined that " \* \* \* Missouri employs the so-called Massachusetts procedure 'impliedly approved in Jackson v. Denno' \* \* \* ". In doing so, the court relied upon State v. Washington, 399 S.W.2d 109 (Mo.1966). We point out that State v. Washington was decided after *Jackson* became the law, and a comparison of its standard with those enunciated in the Missouri cases, above cited, reveals the difference between the 1955 and 1966 standards.

## THE VOLUNTARINESS OF THE CONFESSION

■ The Supreme Court recently re-emphasized that a defective procedure,

---

3. See also, State v. Bridges, 349 S.W.2d 214 (Mo.1961); State v. Barnett, 338 S.W.2d 853 (Mo.1960); State v. Falbo, 333 S.W.2d 279 (Mo.1960); State v. Statler, 331 S.W.2d 526 (Mo.1960); State v. Phillips, 324 S.W.2d 693 (Mo. 1959); State v. Bradford, 262 S.W.2d 584 (Mo.1953); State v. Cochran, 356 Mo. 778, 203 S.W.2d 707 (1947); State v. Ellis, 193 S.W.2d 37 (Mo.1946).

standing alone, is not a sufficient basis for habeas corpus relief:

> "[Our decisions][4] did not establish that an applicant for federal habeas corpus is entitled to a new hearing on the voluntariness issue, in either the federal or state courts, merely because he can point to shortcomings in the procedures used to decide the issue of voluntariness in the state courts. Our decisions make clear that he must also show that his version of events, if true, would require the conclusion that his confession was involuntary."

*Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.E.2d 524, 529 (1971).

■ Stidham alleges: that he was returned to his regular Death Row cell in the early evening of September 22; that between September 22 and September 27, he was questioned intermittently by police officers and state troopers who threatened him with physical harm if he did not tell everything he knew about the murder; that between September 22 and September 27, he was able only to catch short naps while sitting on the toilet because his straw tick, on the floor, was too water-logged to be slept on as a result of his cell being flooded when rioting inmates opened water pipes; that he was giving nothing to eat from September 22 until September 29; that he weighed 184 pounds before the riot but only 159 pounds on September 29; that he was never informed of his *Miranda* rights;[5] that on September 27, he was taken to the prison's athletic field house and questioned in the presence of six police officers armed with pistols, rifles and riot guns; that he was questioned for approximately twenty to thirty minutes, during which time he denied involvement in the murder; that,

thereafter, a rope was placed through his handcuffs and he was hung up for approximately fifteen minutes with his hands behind him; that upon his continued refusal to implicate himself, he was again hung up and beaten with corkball or baseball bats until he lost consciousness; and that he then wrote out a confession which was dictated to him.

■ We believe that the above version of the facts, if true, requires the conclusion that the confession was an involuntary one. See, Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643 (1967); Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).

■ We emphasize that we do not decide or intimate that the allegations are true. It is not the task of the federal court to do so in state habeas corpus matters:

> " * * * [T]he appropriate remedy when a federal court finds a Jackson v. Denno error in a prior state proceeding is to allow the State a reasonable time to make an error-free determination on the voluntariness of the confession at issue. * * * "

*Sigler v. Parker, supra*, 396 U.S. at 484, 90 S.Ct. at 669.

We only note, as did the United States District Court, that we have examined the transcripts and other relevant materials and have found that several of Stidham's allegations have not been contradicted in the record.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings consistent with the remedy provided for in *Sigler v. Parker, supra.*

---

4. The Court was specifically referring to *Jackson v. Denno, supra,* and *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963).

5. Since the *Miranda* decision is not retroactive, *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), this allegation, even if true, is not

dispositive of the case. However, failure to warn of constitutional rights is a factor properly considered in determining the voluntariness issue. *Clewis v. Texas,* 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

GIBSON, Circuit Judge (dissenting).

I respectfully dissent. Appellant Stidham has been accorded many hearings and with the aid of extremely able and expert counsel has raised just about every objection and defense available in the well stocked arsenal of defense tactics —this he has a right to do, but I do not think the never-ending search for error, fancied or otherwise, serves the cause of criminal justice. The Courts rather than spending limited judicial resources in open and legal proceedings should give heed to the many evils engendered in the law's delay and give adherence to the constitutional mandate for speedy trials. Only by unclogging the dockets can this be done. Much has been said and written about the inordinate delays, both at the trial and appellate levels, that have burdened and made ineffective to a large extent our system of criminal justice.

I would affirm on the basis that the Missouri Supreme Court has correctly enunciated the Missouri law applied in this case at the original trial and that Court's holding that the procedure in this case was compatible with Jackson v. Denno. State v. Stidham, 449 S.W.2d 634 (Mo.1970). A State Supreme Court is the best interpreter of its own laws. In addition, a review of the entire record of the original conviction, the record in the plenary hearing in the state post-conviction review, together with the federal post-conviction review in the federal District Court does not affirmatively demonstrate any ground for upsetting the jury verdict of 1954.

First as to the law, the preliminary inquiry into the voluntariness of the confession during the original trial of this case held by the trial judge out of the presence of the jury, I think, adequately satisfied the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963). The failure of the trial judge to use the word "voluntary" instead of "not involuntary" is a matter of semantics and too technical a basis upon which to upset a conviction affirmed by the highest state court. The jury is the ultimate trier of fact on the voluntariness issue if the confession is not involuntary as a matter of law. Jackson v. Denno required a preliminary examination outside of the hearing of the jury on the issue of voluntariness. This was done.

The trial judge at the plenary preliminary hearing could only do one of two things; hold the confession involuntary as a matter of law and thus not admit it, or view it as not involuntary as a matter of law and admit it in evidence together with any evidence on the voluntariness issue that the accused wished to present. After all, the jury is the sole and only arbiter of the facts and only has to give the confession such weight as it deems merited. The trial judge could not say the confession is voluntary and instruct the jury that it must accept the confession and act accordingly.[1] The judge here made the only finding he could legally make to have the confession admitted into evidence for the jury's consideration; that is, it was admissible on the ground that it was not involuntary as a matter of law. This was a far cry from the limited and incomplete procedure condemned in Jackson v. Denno.

The argument here appears to be more a matter of semantics or technicalities than a substantial procedural defect in trial proceedings. The trial court's decision in admitting the confession was based on conflicting evidence, the same evidence that is now urged to upset the verdict and judgment of the state court. No new evidence has been adduced and we are in effect now being asked to review this same evidence and hold the procedure bad because the judge did not use the magic rubric "voluntary" but said in effect, as is clearly shown by the record, that the confession was admissi-

---

1. The trial judge could not tell the jury the confession was voluntary; that would constitute error in a Missouri state trial, be considered a fatal comment on the evidence and as invading the province of the jury.

ble and not involuntary as a matter of law.[2] By refusing to hold that the confession and statements were involuntary, the Court in the context of this hearing would be holding that the confession and statements were voluntary. This particular preliminary hearing on the confession and statements was not held just to see if there was conflicting evidence, as under the New York rule held defective in Jackson v. Denno.

Second as to the facts, I agree with the majority that Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524, is not applicable to this case as the appellant would clearly be entitled to have the confession ruled inadmissible if his version of the facts is correct and, in addition, his conviction would be a travesty on justice if his version of the facts in the case is correct. The conflict of the evidence in this case carries throughout the confession and the other evidence adduced at the trial. The decision on the admissibility of the confession is solely predicated on credibility factors. The only evidence of a forced or involuntary confession comes from the mouth of the accused. All of the other evidence, including that of four St. Louis, Missouri, policemen and two State Highway Patrolmen are in direct conflict with the testimony of the accused in regard to the confession. Further, testimony of the accused regarding his nonparticipation in the killing of Donnell is rather persuasively refuted by prison guard Dietzel and inmates Creighton and Trout, all of whose statements are consistent with the State's version of the group assault and killing of inmate Donnell.

In other words for Stidham to be innocent as claimed all of the other testimony in the case, except as to formal matters and some neutral medical testimony from the Springfield Medical Center, would have to be out and out perjury. As noted by the Missouri Supreme court in Stidham's original appeal, State v. Stidham, 305 S.W.2d 7 (1957), the accused Stidham while taking the stand failed to controvert essential elements of the State's case and failed to adduce any corroboration for his version of the facts.[3]

The trial lasted several days and the jury after being out 1½ hours rendered a unanimous verdict of guilty. Certainly no material error affecting the integrity of the fact-finding process has been disclosed.

I would affirm Judge Collinson and his view that the action of the original trial judge "clearly indicates a finding

---

2. At the conclusion of the preliminary hearing on the issue of the admissibility of the confession (and it would not be admissible if involuntary), the trial judge said,
   "It is the Court's opinion that the matters concerning the statement should be offered in the presence of the Jury, * * * The defendant has of course the right to proceed to challenge the voluntariness of the statement and confession, even before the Jury, but it is the Court's opinion that upon the evidence * * * that the statement is and should be admissible in evidence, subject to further examinations of the witnesses * * *."
   And in response to appellant's counsel's question of whether he was overruling the motion and request "to hold as a matter of law that those statements were involuntary", replied "That is right."

3. A reading of the record of the original trial shows the rioters made a particular effort to break through three doors to get into Death Row where Stidham was being held in solitary confinement (for infraction of prison rules—escape) for the particular purpose of releasing Stidham and then presenting him to the group as their leader. Stidham's version that he left the Death Row area immediately and went upstairs to another cell and listened on the radio while drinking coffee during all of the period of the tumultuous riot does not appear credible. Also no corroboration has been produced by Stidham either at the time of trial or since. While on the other hand three witnesses, guard Dietzel and inmates Creighton and Trout, directly controverted Stidham's version of his actions at that time and place Stidham at the scene of the crime with the other six defendants who were accused of this brutal and sadistic killing. Without detailing all of the evidence, the evidence presented aside from the confession was persuasive.

of voluntariness and is sufficient under the teachings of Jackson v. Denno, *supra,* and Sims v. Georgia, *supra."* Furthermore issues of credibility and issues of fact decided long ago should not be upset by technicalities or semantics. There appears to be no constitutional defect in the fact-finding process utilized in this case and the issue of credibility after full hearing was decided adversely to Stidham both in the original trial and at a plenary State post-conviction hearing, *affirmed* in 449 S.W.2d 684 (Mo. 1970). I would affirm the District Court's denial of relief.