STATE of Missouri, Respondent,

v.

Peter Festus BRIDGES, Appellant.

No. 48323.

Supreme Court of Missouri,
Division No. 2.

March 12, 1973.

---

1. There was a similar instruction, No. 6, on the presumption of innocence, in this case.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Harold A. Thomas, Jr., G. Carroll Stribling, Jr., St. Louis, for defendant-appellant.

HOUSER, Commissioner.

This is a second appeal of the conviction of Peter Festus Bridges of the crime of murder in the first degree. On the first appeal this Court affirmed the judgment of guilt and sentence to life imprisonment. State v. Bridges, Mo.Sup., 349 S.W.2d 214. Defendant not having been represented by counsel on the first appeal, this Court on May 8, 1972 set aside its judgment of affirmance in accordance with Bosler v.

Swenson, 8 Cir., 363 F.2d 154, reinstated the cause on the docket of this Court, ordered the circuit court to appoint counsel and directed counsel to file a brief in this Court. On this second appeal appellant's counsel has filed a brief raising three points.

■ First, appellant asserts error in overruling his objection to the admission of his confessions on the basis that they were involuntary as a matter of law, in that they were obtained after appellant was subjected to intense, repeated interrogation by multiple groups of police officers for a period of over twenty hours while being held incommunicado without food or aid of counsel and while suffering from complete mental hysteria. This issue was thoroughly litigated on the first appeal and decided adversely to appellant in an exhaustive review of the evidence and law. State v. Bridges, supra, 349 S.W.2d l.c. 216–219 [2, 3 and 4]. Appellant's present suggestions throw no new light upon the question. On reconsideration we reach the same conclusions arrived at on the first appeal, for the same reasons. In this connection see Evans v. State, Mo.Sup., 465 S.W.2d 500, 502, and cases cited Keynote 2; State v. Tettamble, Mo.Sup., 450 S.W.2d 191, 192 [1]. It may be taken as established in this case that the statements and confessions of appellant were not involuntary as a matter of law.

■■ Appellant's brief further suggests that the court's findings with respect to the voluntariness of appellant's confession were not unmistakably clear under the rulings in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, and that at the very least the case should be remanded for the entry of clear findings with respect to the voluntariness of appellant's confession after an evidentiary interlocutory hearing. This suggestion was meritorious. The transcript of the record shows that the court did not with unmistakable clarity find the confessions to be voluntary. Accordingly, after this appeal was submitted and on November 8, 1972 this Court ordered the trial court to conduct a hearing and make an express finding on the question. That hearing was conducted on January 19, 1973. Testimony was heard and on the basis of all the evidence, both that introduced during the course of the trial on May 4 and 5, 1960 and at the interlocutory hearing of January 19, 1973, the circuit court found that all statements, admissions and confessions, both oral and written, introduced in evidence at the original trial "were voluntarily given and made by the defendant, and were not obtained by means of force, threats, duress, coercion, or any other illegal means."

This interlocutory finding, however, is not conclusive on the question whether the confessions were voluntary. The ultimate decision was for the jury, under proper instructions. Appellant's principal point is that this question was not properly submitted to the jury; that the court erred in giving Instruction No. 7 on the question of voluntariness of the confessions, as follows:

"The Court instructs the jury that any oral or written statement made by the defendant, even though it should contain matters that prove his guilt, is admissible in evidence against the defendant and is to be given such probative value as evidence as you believe it deserves, if you find it was voluntarily given.

And in this regard, the Court instructs you that by the term 'voluntary' the Court means not secured by duress, that is, by striking or beating the defendant or by threats of physical harm to him, or by promise of immunity to him by anyone competent to grant such immunity.

However, the Court instructs you that to make a confession voluntary in nature it is not necessary to show that such confession or statement be spontaneous, that it is made without either persuasion or questioning, but in this connection you

are further instructed that the facts and circumstances under which the confession was made should be considered, and if you find and believe from all the evidence that the confession was not a voluntary one then you are free to disregard it."

Appellant contends that No. 7 completely ignored the issue of psychological or mental duress or coercion; that throughout the trial appellant contended that the effect of the intense interrogation and deprivation of food and drink, emotionally and psychologically, was to coerce him into making a false confession against his will; that the issue of psychological coercion was the only issue relating to voluntariness of the confession.

Except for one brief, isolated reference,[1] there is no evidence that any of the twelve officers touched appellant at any time; no evidence in this 769–page transcript that appellant was beaten, struck, threatened with physical harm, or promised immunity, in order to induce or extort a confession. On the contrary, all evidence relating to voluntariness of the confessions, from both sides of the case, bore upon the existence (or nonexistence) of psychological or mental coercion. In addition to the recital of the facts in the original opinion bearing on the subject of mental coercion, State v. Bridges, supra, 349 S.W.2d l.c. 218–219, the transcript of the original trial reveals that during the first hours of interrogation appellant was not informed as to the reason for his arrest but was told only that he was "wanted" in Webster Groves; that at midnight he was placed in a cell without a mattress or blanket, with nothing but iron to sleep on; that from time to time during the interrogation he sobbed, yelled and "hollered"; that during the questioning numerous photographers entered the room and took pictures; that "bulbs were going off"; that appellant "couldn't hold [his] emotions" and "broke down"; that he was

"in a low state of mind," weak, hungry and thirsty; that after seeing the pictures of his friends and thinking how nice they had been to him and how "inhumanly" they had been treated he "couldn't stand it"; that he just cried and hollered and made up a story—made up all the details and asked them to "let him alone." After the confession, when food and drink were given appellant, he ate fifteen sandwiches and drank four or five cups of coffee.

Pointing to the absence of evidence of striking, beating, threats of physical harm, or promise of immunity to defendant (the *only* elements of duress submitted for the jury's consideration in the definition of "voluntary") appellant argues that in cautioning in the third paragraph of No. 7 that persuasion and questioning do not make a confession involuntary the court was instructing that the jurors were to disregard any psychological coercion which occurred; that No. 7 contains a positive and highly prejudicial misstatement of the law, since the only issue which could or should have been submitted to the jury was whether mental duress sufficient to render his confession involuntary was practiced on appellant.

Appellant's contentions in this respect are irrefutable under previous decisions of this Court. In State v. Williams, Mo.Sup. en Banc, 369 S.W.2d 408, the identical situation was presented. There was no evidence and no contention that Williams' confession was produced by threats, physical abuse, hope of lenience or reward. The only evidence bearing on the issue of voluntariness related to continuous and extended interrogation over a long period of time without allowing Williams to sleep, rest or have proper food and drink. Instruction No. 7 in that case failed to include the issue of mental duress in the definition of voluntarily, and submitted only the elements of threats, physical abuse and statements offering hope of lenience or re-

---

1. That just prior to the time he confessed an officer "was gripping [his] shoulder blade at [his] neck." Transcript, p. 710.

ward. Because the real issue in the case (mental duress and coercion) was not presented to the jury the instruction was held "clearly erroneous" and the conviction was reversed on this ground. The Williams case was followed in State v. Goacher, Mo.Sup., 376 S.W.2d 97, in which throughout the case the defendant pressed the issue that the confession was induced by mental coercion and duress, but in which Instruction No. 7 defined "voluntarily" in terms of not holding out any hope of reward or leniency or fear of punishment, without mentioning coercion, duress, intimidation, mental pressure or any equivalent term. Citing Williams this Court reversed the conviction for error in giving Instruction No. 7, pointing out that if certain elements were to be singled out the instruction "should certainly have mentioned specifically the element of *coercion* or duress which was the real issue," adding that the omission to hypothesize the basic factual issue was not cured by adding the generality that the jury had the right to consider all of the surrounding circumstances in determining voluntariness. See also State v. Deyo, Mo.Sup., 358 S.W.2d 816.

The State does not meet this issue on the merits. The State takes the position that this allegation of error was not properly preserved for review since no objection was made to the giving of No. 7; no instruction on the subject was offered by appellant; the point was not made in the motion for new trial, and that No. 7 should not be reviewed under the plain error rule.[2] While this Court will not consider any matter relating to instructions as "plain error" unless the court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice, State v. Auger, 434 S.W.2d 1, 4 [1] (Mo.1968), and trial errors involving instructions are not to be raised collaterally unless the error is so glaring as to make

the trial unfair, Tucker v. State, 481 S.W.2d 10, 14 [4] (Mo.1972), the conclusion is compelled that manifest injustice and an unfair trial resulted from the giving of Instruction No. 7. The State's case stood or fell on the issue of voluntariness of the confession, for there was little in the way of circumstantial evidence independent of the confessions to connect appellant with this crime. Therefore it was of critical importance to the administration of justice that the jury be clearly and properly instructed on the meaning of the word "voluntary"; that the jurors be accurately informed and directed as to the proper elements they could and should take into consideration in determining whether the confessions were voluntarily given. The plain error in this case consists in instructing that "voluntary" means absence of duress, and then defining duress as *striking, beating, threatening physical harm or promising immunity*, when none of these factors was shown in evidence. The error was compounded by failing to define voluntariness in terms of psychological and mental coercion, which was the soul, body and substance of the evidence on this issue. Misdirecting the jury by including irrelevant elements and omitting relevant elements in defining the term "voluntary" constituted plain error affecting substantial rights of the accused, resulting in manifest injustice and denial of his right to a fair trial.

Furthermore, not only did No. 7 submit extraneous and improper criteria for the jury's consideration and omit elements vital and essential to the determination, but also in paragraph three it went further and effectively negated the possibility of the jury finding involuntariness on the basis of psychological or mental coercion. In paragraph three the court instructed the jury that to make a confession voluntary it is not necessary to show that it is made with-

2. Supreme Court Rule 27.20(c): "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

out persuasion or questioning. The court thereby justified *some* persuasion and questioning. On the basis of paragraph three the jury may have concluded that the amount of persuasion and questioning employed in this case, and the deprivation of food and drink resulting in appellant's admittedly marked emotional reactions, were within permissible limits. No. 7 should have prescribed the limits beyond which persuasion and interrogation may not go, but no standard or measuring stick was given the jury by which they could determine whether permissible limits were exceeded in this case.

■ As stated in State v. Goacher, supra, 376 S.W.2d l.c. 105, "We are hesitant to reverse a case for error in an instruction after a long, arduous, and conscientiously conducted trial, but we cannot disregard so recent a mandate of our Court on an issue which we deem to be indistinguishable." This reluctance is accentuated by the fact that the error in No. 7 was not brought to light on the first appeal but has lain dormant for many years during which the judgment of conviction has been officially considered final. The saving grace afforded by paragraph (c) of Rule 27.20, however, is not limited by the passage of time. Manifest injustice must be corrected, "better late than never."

For error in giving Instruction No. 7 the judgment is reversed and the cause is remanded for a new trial.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., and HENLEY, J., concur.

DONNELLY, J., concurs in separate concurring opinion filed.

DONNELLY, Judge (concurring).

I concur in the principal opinion but desire to direct attention to relatively recent expressions by the United States Supreme Court on procedures for determining voluntariness of confessions:

(1) In Lego v. Twomey, 404 U.S. 477, 489, 490, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972), the Court said: "We also reject petitioner's final contention that, even though the trial judge ruled on his coercion claim, he was entitled to have the jury decide the claim anew. To the extent this argument asserts that the judge's determination was insufficiently reliable, it is no more persuasive than petitioner's other contentions. To the extent the position assumes that a jury is better suited than a judge to determine voluntariness, it questions the basic assumptions of Jackson v. Denno; it also ignores that *Jackson* neither raised any question about the constitutional validity of the so-called orthodox rule for judging the admissibility of confessions nor even suggested that the Constitution requires submission of voluntariness claims to a jury as well as a judge. Finally, Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491 [522] (1968), which made the Sixth Amendment right to trial by jury applicable to the States, did not purport to change the normal rule that the admissibility of evidence is a question for the court rather than the jury. Nor did that decision require that both judge and jury pass upon the admissibility of evidence when constitutional grounds are asserted for excluding it. We are not disposed to impose as a constitutional requirement a procedure, we have found wanting merely to afford petitioner a second forum for litigating his claim."

(2) In Swenson v. Stidham, 409 U.S. 224, 230, 93 S.Ct. 359, 363, 34 L.Ed.2d 431 (1972), the Court agreed with our conclusion that "the Jackson v. Denno error, if any, was sufficiently remedied." However, the Court then said:

"This, of course, does not end the matter. A state prisoner is free to resort to federal habeas corpus with the claim that, contrary to a state court's judgment, his confession was involuntary and inadmissi-

ble as a matter of law. Neither the District Court nor the Court of Appeals reached this issue. We are asked to decide the question here but it is not our function to deal with this issue in the first instance.

"The judgment of the Court of Appeals for the Eighth Circuit is reversed and the cause is remanded for further proceedings consistent with this opinion."

It would seem accurate to say that, at least since 1966 (State v. Washington, 399 S.W.2d 109 (Mo.1966); Stidham v. Swenson, 443 F.2d 1327 (8th Cir. 1971), we have followed the *Massachusetts practice* in determining the voluntariness of confessions. It was described in Commonwealth v. Marshall, 338 Mass. 460, 155 N.E.2d 798, 800 (1959), as follows: "That practice has been referred to in Commonwealth v. Lee, 324 Mass. 714, 720, 88 N.E.2d 713, as a 'humane practice,' giving the defendant two chances: first before the presiding judge who may decide to exclude the statements; and then before the jury who may disregard them. If the judge excludes them, the particular testimony is never heard by the jury; if the judge determines that they are competent, the jury may nevertheless disregard them."

In view of the holdings in Lego v. Twomey and Swenson v. Stidham, supra, I believe we should, if and when the question is presented to us on appeal, review the practice of submitting *to the jury* the issue of voluntariness of a confession. (See Missouri cases cited in Jackson v. Denno, 378 U.S. 368, at 397 and 415, 84 S. Ct. 1774, 12 L.Ed.2d 908) I do not take an irreversible position on the question at this time. However, now that an accused is assured that the voluntariness of his confession will be determined by state judges (State v. Stidham, 449 S.W.2d 634 (Mo. 1970)), *and then* by federal judges (Swenson v. Stidham, supra), I doubt that he needs the protection of a jury determination.