STATE of Missouri, Respondent,

v.

James W. STIDHAM, Appellant.

Nos. 45537, 54674.

Supreme Court of Missouri, Division No. 2.

Feb. 9, 1970.

John C. Danforth, Atty. Gen., Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, for respondent.

Mark M. Hennelly, St. Louis, for appellant.

BARRETT, Commissioner.

In 1952 James William (known to one and all as "Slick") Stidham was sentenced to 25 years' imprisonment for his part in the armed robbery of the Grapette Bottling Company in Joplin. For the details of that crime see State v. Stidham, Mo., 258 S.W.2d 620. On October 3, 1955, after a jury trial and verdict in July 1955, Stidham was sentenced to life imprisonment for his participation in the slaying of fellow-inmate Walter Lee Donnell on September 22, 1954, at the height of the riot of approximately 800 inmates of the main prison in Jefferson City. In the trial of the latter case and now, at the behest of Father Clark, he has been represented by a distinguished lawyer, Mr. Mark M. Hennelly, then a successful and experienced criminal lawyer, now a vice-president and general counsel of one of the larger railroads. The murder conviction was appealed upon a full transcript of three volumes, there was a complete appellate review, the opinion was turned into twenty-three headnotes, after counsel raised what he deemed, no doubt every conceivable point and error. That conviction of murder was affirmed on September 9, 1957, in State v. Stidham, Mo., 305 S.W.2d 7. In view of some of the problems now raised it should be pointed out that before the murder case reached trial stage Stidham's diligent counsel filed every conceivable motion and plea, including the right to a change of venue which accounts for the trial in Butler County, many miles from Jefferson City. Over the years, following the affirmation of the life sentence, Stidham has lodged in this court innumerable letters, communications and pro se motions and they have all been responded to. In June 1966 he personally filed and argued an appeal from a 27.26, V.A.M.R. proceeding in Butler County in which he attempted to present several of the issues now before the court. State v. Stidham, 403 S.W.2d 616. In the meanwhile the court en banc revised its post-conviction procedure, and Stidham having unsuccessfully instituted another 27.26 proceeding, this court set aside its affirmance of the prior post-conviction judgment and remanded the cause for an amendment of the motion to vacate "which includes every ground known to the prisoner," and in the spirit of the rule for "a full evidentiary hearing" on all questions of fact. The order and judgment in that opinion is reported in State v. Stidham, 415 S.W.2d 297. And on that proceeding, on Stidham's behalf, there has been a change of venue from Butler County and there has been a new and complete hearing before Honorable Michael F. Godfrey, a circuit judge in St. Louis. Furthermore, in response to what was deemed to be the spirit of the Bosler cases, (Bosler v. Swenson, 8 Cir., 363 F.2d 154 and Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33) the court en banc set aside the judgment of this court upon the original appeal, 305 S.W.2d 7, and again appointed Mr. Hennelly to represent Stidham in both cases. As indicated, there was a full hearing on the 27.26 proceeding, all issues were found against Stidham and he has appealed the judgment in that case. In the order setting aside the original submission the two causes were consolidated and are to be disposed of in this opinion. It should be stated in this connection that Mr. Hennelly has raised, extensively briefed, and orally argued every conceivable claim of error in the original trial, all of which covers and includes every possible right to relief in a post-conviction proceeding.

One of the claims of infringement of due process is that the state was "allowed to prove and the jury was instructed to consider a crime not included in the indictment." Const.Mo. Art. I, Sec. 18(a),

V.A.M.S. Thus, it is said, he was indicted for the murder of Donnell, but he "was not, however, indicted for participating in a conspiracy to kill Donnell." Therefore, it is urged that the court erred in admitting in evidence conversations and conduct on the part of others engaged in slaying Donnell. By the same token it is contended that the court prejudicially erred in instructing the jury in referring to and hypothesizing a concert of action, an aiding and abetting in slaying Donnell. In the first place the argument overlooks not only the theory but the specific allegations of the indictment. And in the second place it ignores the facts of Donnell's killing, the circumstances in which he was savagely murdered. While Stidham, as well as his codefendants, was given a severance, the indictment charged that "William R. Hoover, Jackie Lee Noble, Paul Edward Kenton, James William Stidham, Rollie Laster, Don Wm. DeLapp and Joseph M. Vidauri [1] * * * did then and there feloniously, wilfully, deliberately, premeditatedly, on purpose and of their malice aforethought, make an assault upon one Walter Lee Donnell and then and there with dangerous and deadly weapons, to wit: a sledgehammer, and a knife, and another sharp instrument or dagger * * * a wooden table leg, and other blunt instruments * * * and their fists and hands and feet * * * strike, hit, stab, cut, beat and stomp" and thereby kill Donnell. The testimony was that Kenton held Donnell while Laster stabbed him with an ice pick, Stidham "slashed" him with a knife, and two others hit him in the head with a sledgehammer. In addition to other bruises and contusions an autopsy on Donnell's body revealed "a severe mashed in, or compressed area in the right side of the face approximately just underneath the right eye, that extended back, involving the right ear with separation of the lower part of the ear, lower part of the ear was torn away from the body about a third of its normal attachment area." There was a multiple, crashing, "eggshell type fracture" of the skull, two knife-cut wounds of the neck, five puncture or stab wounds in the chest and four stab wounds in the back. The doctor said that two of the stab wounds had entered the heart cavity and of course were fatal. The testimony showed that until the three doors to Death Row were forced and Stidham and Laster released and Stidham furnished a knife DeLapp led the group bent on killing Donnell. As soon as Stidham was released DeLapp put his arm around Stidham's shoulders and said, "Gentlemen, I have brought you this far, this is your leader from here on." And shortly this group gained entrance to Donnell's cell and killed him. Prior to the riot Stidham had repeatedly threatened to kill both Donnell and James M. Creighton.

■ This briefly narrated record completely refutes the appellant's claim of an invasion of due process in submitting "a crime not included in the indictment." The indictment did not in terms charge the misdemeanor offense of conspiracy (RSMo 1959, §§ 556.120, 556.130, V.A.M.S.), even though inherent in the circumstances it may have been an incidentally included offense. Principal instruction number 4 hypothesized that the seven named defendants "entered into a conspiracy and agreement" and "acting in concert and together" and "aided, abetted, assisted or encouraged" in slaying Donnell but, as indicated, the evidence supports the hypothesis. There was a separate conventional instruction defining "conspiracy" stating that "all persons are principals who are guilty of acting in concert and together in the commission of a crime."

■ The latter instruction was not only warranted by specific statute (RSMo 1959,

---

1. The details of Donnell's murder are set forth in the records and appeals of Stidham's codefendants: State v. Laster, 365 Mo. 1076, 293 S.W.2d 300 (certiorari denied 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167); State v. Noble, Mo., 387 S.W.2d 522; State v. Kenton, Mo., 298 S.W.2d 433; State v. Vidauri, Mo., 293 S.W.2d 955 and State v. Vidauri, Mo., 305 S.W.2d 437.

§ 556.170), upon this record, as the court held on the previous appeal, State v. Stidham, 305 S.W.2d l. c. 15, "there was ample evidence for a finding of the conspiracy submitted and the actual participation in and consummation of the said conspiracy by the persons named in the instruction." A case directly in point in every respect is State v. Holloway, 355 Mo. 217, 195 S.W. 2d 662, an instance of a murder in a jail-break. Excerpting, the court said, "Goldie and Buster were co-conspirators with appellant. Their testimony was competent in establishing the fact of the common design or conspiracy. * * * Conversations between Goldie and Buster were competent evidence against appellant although made outside of appellant's presence. * * * Furthermore, *proof that appellant and others conspired together to commit an unlawful act and that the killing occurred in furtherance of the conspiracy may be shown under an indictment or information charging first degree murder only.*" (Emphasis supplied.)

Relying on Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, appellant contends that due process was violated in that the state knowingly used perjured testimony. This assignment is leveled at the state's use of Herman Trout and James Creighton, also prison inmates, as witnesses. (For a partial review of Creighton's bizarre life from a sentence of death in 1932 to a commutation of prison sentence in 1956 see State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556.) The argument now is directed solely to the fact that the sentences of Creighton and Trout have been commuted and they have been released from prison. In the trial of this cause there was first a motion to disqualify Creighton as a witness upon the allegation that he was of unsound mind. That motion was heard at length, all medical and psychiatric records from the State Hospital at Fulton were introduced, and the court found as was all but obvious that he was indeed not incompetent as a witness. See State v. Stidham, 305 S.W.2d 1. c. 13. Upon the original trial and appeal

it was sought to establish the claim of perjured testimony or incompetent witness by offering to prove that while Creighton was held in the Cole County jail he was granted special favors, particularly that "he had access to one Mary Annis" (305 S.W.2d 7) despite the appellant's proof from the Fulton Hospital records that Creighton "is a homosexual."

■ In any event and apart from the federal cases, this court has long since "recognize(d) that a judgment obtained by the knowing use of perjured testimony should be vacated upon a proper factual showing." State v. Garton, Mo., 396 S.W. 2d 581. The insuperable difficulty with this particular claim of infringement of due process is that it is not supported by the record. Annotation 3 L.Ed.2d 1991. The only circumstance now present as to both Creighton and Trout is the fact that in July 1955 they did testify as state's witnesses and subsequently their sentences were commuted by the then Governor of Missouri. And again, on this issue, there was a hearing on the 27.26 motion and aside from the bare fact of the commuted sentences the court found as did another court in 1964 (State v. Stidham, 403 S.W.2d 616) that "(t)he record is barren of facts to support such allegations." It is not necessary to detail their testimony, their evidence and that of numerous other witnesses is all set forth in the appeals of at least five of the participants in Donnell's slaying. On the 27.26 hearing the trial court could have added, after reading the record in Stidham's original appeal, that the testimony of Creighton and Trout was cogently corroborated in every detail by a number of physical facts and by other witnesses, particularly by the prison guard, Mr. Dietzel, on duty in Death Row when Donnell was murdered. In contrast to the testimony of Creighton and Trout there is no corroboration whatever of Stidham's testimony that he went up to B-Hall and spent the night of the riot innocently listening to the radio, had no knowledge of Donnell's slaying and took no part in the

riot. The one incriminating circumstance that even he has never and cannot brush away is the conceded fact that after the three doors to Death Row were broken open and after his cell was unlocked he, unlike others and undoubtedly contrary to prison rules, did leave Death Row. Thus upon this record there was no support for the charge of knowing use of perjured testimony.

A further due process point is the claim of the "court's failure to make timely appointment of counsel." Here the appellant relies upon Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 and other landmark cases dealing with the appointment of counsel. It is not necessary here to again examine those cases, their standards are recognized and applied even though the Miranda and Escobedo cases are not retroactive. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882. There is no factual similarity in this and any of the cited cases, particularly, for example, as in White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193, and Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5, in which there were pleas of guilty at the preliminary or "at a probable cause hearing" and the pleas were introduced in evidence upon the jury trials. In certain instances in which there has been manifest injustice, this jurisdiction recognized the importance of the right to counsel long before Escobedo and Miranda. See Ex parte Stone, Mo.App., 255 S.W.2d 155; State v. Jackson, 344 Mo. 1055, 130 S.W.2d 595 and State v. Witt, Mo., 422 S.W.2d 304.

The appellant's complaint as to counsel arose in and for the most part is based upon these circumstances: Initially the prosecution of these seven defendants for this particular offense was instituted by the prosecuting attorney in a magistrate court and preliminary hearings were held, a necessary prerequisite and procedure before a formal information could be filed in the circuit court. RSMo 1959, § 544.-250. Appellant and his counsel make much ado of the fact that at one of these preliminary hearings he demanded counsel and yelled out asking for some lawyer to come forward. In his brief it is said that there was no appointment of an attorney "until the second arraignment" and in this connection stated that he was never advised of his right to a lawyer—even though he requested one at the preliminary—and that he was entitled to counsel before his mental examination at the United States Medical Center in Springfield.

■ The basic fallacy in the appellant's contention on this phase of the case is that again there is no factual basis for his claim of an infringement of rights at a preliminary. In the first place there is neither claim nor proof that anything done or said at any preliminary hearing or in any medical or mental examination was employed against him or that the state even secured any relevant information. State v. Smith, Mo., 411 S.W.2d 208. But more important and decisive here as to counsel at a preliminary hearing is the fact that Stidham was not prosecuted by information. On November 23, 1954, a grand jury returned an indictment charging Stidham and his accomplices with the murder of Donnell. Thus there was no occasion or place for a preliminary hearing. "It is a well-established law of this State that the grand jury may investigate and indict one charged with a felony although he has been arrested and held for a preliminary examination, and is not bound to await the action of the examining court, for the reason that the action of the examining court is no bar to the right of the grand jury to inquire into the case and indict the accused, even though he has been discharged on the preliminary examination." State v. Gieseke, 209 Mo. 331, 339, 108 S.W. 525, 527.

■ As a matter of fact, other than appellant's assertions, there is no record support for his charges of lack of counsel prior to trial. Whatever may have occurred

at any preliminary has not been made a part of this record. In any event, as stated, an indictment was returned, the defendants, the indisputable record recites, were duly arraigned, each defendant was furnished a copy of the indictment and upon the request of Stidham for the appointment of a certain lawyer, the court appointed Mr. Hennelly. Thereafter there were no motions or proceedings or even references to a preliminary hearing or to anything that may have occurred during such a hearing. Mr. Hennelly was appointed to represent appellant on November 23, 1954, and on December 6, 1954, a formal plea of not guilty was entered. Almost immediately, on December 14, 1954, on Stidham's behalf, there were motions for production and inspection of any statements that may have been given, a motion to dismiss for the reason of two offenses—homicide and assault with intent to kill, a motion for a severance, a motion for a polygraph examination and a motion to suppress any statement he may have given. These procedures were all considered in turn and disposed of, including a motion for a continuance and finally an application for a change of venue. The cause proceeded to trial and in the first instance a mistrial was declared when it was discovered that certain jurors were reading newspaper accounts of the trial. In the present 27.26 proceeding, after an unrestricted hearing, the court found these issues with respect to counsel against appellant, that is the court found that failure to appoint counsel at any preliminary stage of the cause or during his interrogation by police and prison authorities had not infringed any of appellant's constitutional rights and that finding is convincingly supported by the record. State v. Donnell, Mo., 430 S.W.2d 297; Crosswhite v. State, Mo., 426 S.W.2d 67. As a matter of fact appellant's interrogation in connection with the prison riot and Donnell's slaying is more appropriately considered in connection with his assertion of involuntary confession.

There is a threefold assignment of error in this respect, neither of which would nec-

essarily result, as the appellant seems to think, in his exoneration and release from imprisonment. It is first urged in general terms that the court erred in admitting in evidence exhibit 16, his own handwritten confession. It is said that its admission deprived appellant "of his liberty without due process of law." This allegation is not a briefed and argued point; in connection with it, however, it is contended that the court's procedure for determining voluntariness "did not comport with the minimum standards" of due process in that "no specific finding of voluntariness was made by the judge prior to submitting the issue to the jury." In the second place it is said that under the evidence "the alleged confession was coerced, involuntary, and taken in violation of the defendant's Constitutional rights," meaning presumably, that upon the record the confession was involuntary as a matter of law. A third and connected point is that the instruction submitting the issue to the jury was erroneous "by failing to properly instruct the jury on the Constitutional standards to be used in making their determination as to the voluntariness" of the confession. The latter point is not too clear—in some aspects it would seem to say that a question of law should have been submitted to the jury. In the argument of this contention, presented as a separate point, it is said that the jury was given an "unconstitutional standard." At another point it is said that the instruction failed to include or submit "mental coercion or duress" and, therefore, under State v. Williams, Mo., 369 S.W.2d 408, was prejudicially erroneous. Thus the complete gamut of involuntary confessions is sought to be invoked one way or another.

It is necessary at this point and as to all claims of involuntary confession to have some understanding of the record and the context and manner in which they arose. In this case, in addition to all other motions, there was a separate motion to suppress "any and all statements," oral or written, that Stidham may have made for the specified reason that the "alleged state-

ments were involuntary and *as a result of physical force and threats of physical force applied against this defendant* by police officers of the City of St. Louis, guards of the Missouri State Penitentiary and officers of the Missouri Highway Patrol." (Emphasis supplied.) That motion was filed on December 14, 1954, and the record recites that it was overruled on December 20, 1954. That motion was filed and passed on while the cause was pending in Cole County and it does not appear just what if any evidence was heard before the court passed on the motion. Thereafter, when in the course of the trial in July 1955 it appeared for the first time from the testimony of a highway patrol sergeant that Stidham's oral and written confessions were to be employed defendant's counsel, even in 1955, and unlike in State v. Williams, "moves the Court to conduct a preliminary examination and asks the Court to inquire into the voluntariness of the statement, and to determine whether the statement was given voluntarily, either the oral or the written statement." Thereupon the court interrupted the trial and out of the jury's presence and hearing conducted a hearing on appellant's motion.

Highway patrol officers, St. Louis police, prison officials and all others present when Stidham's statements were made or given were examined at length and in detail as to the circumstances in which they were given. It is not necessary to detail the circumstances, Stidham in testifying upon the trial and the motion said that after he was taken to the field house in the recreation area where the investigation into the riot and, incidentally, Donnell's murder, was being conducted, he was handcuffed, "a rope (was fastened) between the handcuffs * * * I was lifted up in the air where all my weight had to bear on my two arms." He said that the police officers and patrol officers, fifteen to twenty, left him thus suspended from the ceiling for fifteen minutes and then because he refused to give a statement they again lifted him up and beat him with cork ball bats until he passed out. And, he said, that as a re-

sult of this treatment "I agreed to write a statement that they dictated to me." And so after his oral statements and despite his paralyzed arm he wrote the statement and the officers, unspecified, forced him to sign it.

Contrary to Stidham's testimony the several officers who took part in the interrogation, accounted for Stidham's presence, every minute of time, and his treatment from the time on September 22nd he was moved from Death Row to O-Hall and finally on September 27th when he was escorted from O-Hall to the recreation area and his interrogation which lasted less than thirty minutes. Incidentally Stidham was confined in solitary in Death Row as punishment and for safekeeping because of an attempt to escape the previous January. Creighton was likewise an incorrigible and confined in Death Row, a maximum security area, as punishment. And the inference is that Donnell, thought by the prison population in general and Stidham and his friends in particular to be a snitch was confined there for his personal safety. In any event, the officers, one by one, denied the use of force, threats or violence. Donnell was murdered on September 22nd and the officers say that except in passing Stidham was not questioned until he gave the statements on September 27th. He claims, however, that when he was moved to O-Hall he was placed in a bare cell, without running water, that the windows were broken and he was only allowed "to keep a pair of pants and shoes on" and he said that he was not "given any food or water for three days." All of this testimony was denied by the prison authorities even though during a part of the time order had not been restored and some buildings were still burning. Without narrating even briefly, the testimony in contradiction of Stidham's uncorroborated claims was all but overwhelming and even giving some credence to his version the circumstances do not approach those of Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed. 2d 643, which "case documents a shocking

display of barbarism." And again, after overruling the latter motion to suppress, all these witnesses testified to the same facts and circumstances and upon this testimony the issue of voluntariness was submitted to the jury. There was in point of fact upon the trial of the cause no claim of mental coercion, the claim was that the oral and written confessions were obtained by physical force and violence. And this is what Mr. Hennelly argued to the jury, it was not until his 27.26 hearing, thirteen years later, that there was a claim of mental duress. In these circumstances, as upon the original appeal, the then conventional instructions on voluntary confession were not prejudicially erroneous. State v. Laster, 365 Mo. 1076, 293 S.W.2d 300; State v. Stidham, Mo., 305 S.W.2d l. c. 16–18.

■ In view of the insistent argument one other matter should be noted. In addition to his oral statements this is Stidham's confession, admittedly written by him:

"Kenton held Donald while Laster stabbed him several times with a ice pick, at the same time I slashed at him three or four times around the face and neck with a knife that Kenton gave me when he opened the door, when Donald fell to the floor Linder and Thompson each said get Donald with the sledge and they proceeded to hit him with a sledgehammer and crowbar; during this time someone was holding a flashlight that Kenton previously had. When we left the cell Donald was lying on his back with his head pointed toward the door. The knife I had was a regular kitchen knife about six or seven inches in length, when I got back upstairs in B-Hall, I threw the knife on the floor near the west end on the south side of the building."

In this statement, according to the appellant, there are three errors which he says demonstrate that the six officers signing as witnesses dictated the statement thus conclusively establishing that the statement was not voluntary. The statement recites his age as 25 when in fact, as shown by his birth certificate, he was 28. His residence was given as Kansas City when in fact he had not lived there and, three, although not to be found in the statement, that he was credited with three prior felony convictions when in fact he had but two—one, he says, having been "nullified." The officers all say that they had no personal knowledge of these items except as Stidham wrote them in his statement. And to further confuse this issue when he was in the medical center in Springfield the documents he introduced in evidence show that in two instances he gave his age as 32. If these details are of any significance upon the issue of voluntariness it could be pointed out that in the statement Creighton's name is misspelled "Crayton" and repeatedly Donnell's name is misspelled "Donald" and he does not claim that the officers directed him to thus misspell these names. And more significantly as to the slaying of Donnell, the statement says that "Paul Kenton unlocked my door" but upon his 27.26 hearing, years later, he says "It was some colored fellow. I don't remember who it was. I think it was Ford." Thus not only is there a direct conflict in the testimony, upon the appellant's own version there looms a large credibility gap. And in this connection, by the time Stidham was brought to the interrogation center on the 27th of September there was but little point in obtaining a statement, let alone a confession, from him. By that time the guards had all been released from the rioters' custody and the cells, particularly Mr. Dietzel, and they along with Stidham's co-defendants had supplied all the details of the riot as well as the killing of Donnell. By the time Stidham gave his statements there was no mystery as to Donnell's death or as to Stidham's part in it and upon this record the statement played but little if any part in his conviction.

All that has gone before in this opinion is but background and preliminary to appellant's principal claim that the trial of his case, particularly as to his oral statements

and his confession, does not meet the standards of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Brooks v. Florida, supra, and numerous other landmark federal cases concerned with the subject of voluntary confessions. It is not necessary here to attempt an explication of these cases, that has been done several times and their mere citation indicates an awareness of their significance and controlling force. One of the latest explications of these and numerous other cases is Parker v. Sigler, 413 F.2d 459 and it is sufficient here to say that the interpretation of the Eighth Circuit Court of Appeals is accepted.

■ The first and basic weakness of appellant's presentation is his failure to recognize that unlike Jackson v. Denno this jurisdiction does not apply or follow the so-called New York rule in determining the voluntariness or involuntariness of confessions, Missouri employs the so-called Massachusetts procedure "impliedly approved in Jackson v. Denno," State v. Washington, Mo., 399 S.W.2d 109, 114. Upon the trial of this case, after the appellant's motion and the indicated hearing before the court, out of the jury's hearing, the court made this order: " * * * it is the Court's opinion that the matters concerning the statement should be offered in the presence of the Jury, subject of course to any attacks as to its credibility by the Defendant. The Defendant has of course the right to proceed to challenge the voluntariness of the statement and confession, even before the Jury, but it is the Court's opinion that upon the evidence that has been offered before the Court and outside of the hearing of the Jury, that *the statement is and should be admissible in evidence.*" Only a single word is missing, the court, unfortunately, did not in the italicized clause employ the word "voluntary," nevertheless, the meaning and intent are implicitly plain. "Although the

judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598. It is not necessary to again detail the conflicting evidence and demonstrate, as indicated from even a brief recitation upon the "totality of the circumstances" (Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423) the judge's finding of voluntary confession, prior to submission to the jury, was indeed supported by cogent and convincing testimony. State v. Hester, Mo., 425 S.W.2d 110; Crosswhite v. State, Mo., 426 S.W.2d 67; State v. Williams, Mo., 416 S.W.2d 956; State v. Glenn, Mo., 429 S.W.2d 225.

And if this does not suffice, thirteen years later, upon the 27.26 hearing the appellant was again given full opportunity to attack the previous finding and record and he did so but the court on change of venue found the issues against appellant. It may be interpolated that upon the latter hearing he for the first time attempted to inject the issue not alone of a confession produced by "police brutality" but of mental duress and coercion. But here he attempts to connect the murder of Donnell and the events of September 22 and 27, 1954, with his prior confinement and general treatment for infraction of rules and attempt-to-escape events and treatment completely disassociated with the riot and slaying. Needless to say, these are "scarcely factors of involuntariness in a plea." Verdon v. United States, 8 Cir., 296 F.2d 549, 552. But again and upon this issue and in the new 27.26 hearing the patrol, police and prison officials were again called, including patrolman Barton whom Stidham had accused as one of his tormentors and he denied that he ever at any time interrogated or handled Stidham, although he had talked to Creighton, Trout, Laster, Noble, Hoover, DeLapp and Vidauri. In any event all these witnesses, all produced by the state, categorically or implicitly refuted all of Stidham's claims of mistreatment, either

physical or mental. And upon this new hearing and record another circuit judge made another complete finding of law and fact. The court found, citing the Glenn and Washington cases, supra, that Judge Randolph Weber in 1954 had "followed the correct procedure in determining the issue of voluntariness of the confession and specifically made a finding relative thereto and this Court now so finds that the correct procedure was utilized." And finally the court found, as had the previous court, that the oral and written confessions were voluntary and, needless to add, the latter finding is overwhelmingly supported and procedurally and factually the cause meets all the requirements of the federal cases and there has been no invasion of due process. Crosswhite v. State, State v. Glenn and State v. Williams, supra.

Accordingly the original judgment, State v. Stidham, Mo., 305 S.W.2d 7, is affirmed and the judgment in the 27.26 proceeding is likewise affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.