James William **STIDHAM**, Appellant,

v.

Harold R. **SWENSON**, Warden,
Appellee.

No. 20685.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1973.

Decided March 28, 1974.

On Rehearing En Banc
Nov. 26, 1974.

Mark M. Hennelly, St. Louis, Mo., for appellant.

John C. Danforth, Atty. Gen., and David Robards, Asst. Atty. Gen., Jefferson City, Md., for appellee.

Before GIBSON, HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

The sole issue on this habeas corpus appeal is whether James Stidham's confession that he participated in the brutal slaying of a fellow inmate during a riot at the Missouri State Penitentiary was properly received in evidence at his state trial for murder. The state trial court held that the confession was voluntary and properly received in evidence. This ruling was affirmed by the Missouri Supreme Court. State v. Stidham, 305 S. W.2d 7 (Mo.1957), denial of motion to vacate sentence affirmed, 403 S.W.2d 616 (Mo.1966). The voluntariness of the confession was again sustained in a state post-conviction proceeding and the Missouri Supreme Court affirmed in State v. Stidham, 449 S.W.2d 634 (Mo. 1970). The United States District Court, Western District of Missouri, subsequently denied Stidham's habeas corpus petition without an evidentiary hearing. It too found that Stidham's confession was voluntary. Stidham v. Swenson, 328 F.Supp. 1291 (W.D.Mo. 1970). This Court reversed the District Court, holding that the state court had failed to comply with the requirements of Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964), in determining the voluntariness of the confession. We remanded to the District Court. The Supreme Court of the United States reversed, holding that the post-conviction determination was procedurally adequate and substantially acceptable under the due process clause. Swenson v. Stidham, 409 U.S. 224, 93 S. Ct. 359, 34 L.Ed.2d 431 (1972), modified, 410 U.S. 904, 93 S.Ct. 955, 35 L. Ed.2d 266 (1973). The Supreme Court remanded the matter to this Court with instructions to determine whether Stidham's confession "was involuntary and inadmissible as a matter of law." Swenson v. Stidham, *supra* at 409 U.S. 231, 93 S.Ct. at 363.

In making this determination, we must consider the totality of the circumstances and cannot override the state court's determination unless it is established by " * * * convincing evidence that the state courts' determination [is] erroneous." LaVallee v. Rose, 410 U.S. 690, 695, 93 S.Ct. 1203, 1206. 35 L.Ed.2d 637 (1973); Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L. Ed.2d 423 (1967); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L. Ed.2d 895 (1966).

An independent examination of the record convinces us that the state erred in finding the confession to be voluntary. This record, as that in Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643 (1967), documents a shocking display of barbarism which should not escape remedial action.

The undisputed evidence is that James Stidham was confined to the Missouri State Penitentiary in May, 1952, pursuant to a twenty-five year sentence for robbery. In January, 1953, he was placed in solitary confinement for an attempted escape. The cell to which he was confined was five feet by seven feet. It had a wash basin, a toilet and a steel bunk with a straw tick as a mattress. It was infested with cockroaches, rodents and pigeons. It was poorly ventilated. He remained in the cell until July 12, 1954, when he was transferred to another cell where the conditions were substantially the same as those in the cell which he had just left, other than the new cell had no bunk on which to place the straw tick. Throughout the entire period, Stidham was not permitted to visit with family or friends. He left his cell on only one occasion, that for a court appearance.

At 6:30 P.M. on September 22, 1954, a riot occurred in the prison. About one hour later, Stidham was released from his cell by other rioters. At 10:00 P.M., the severely mutilated body of inmate

Walter Donnell was found in a cell near the one in which Stidham had been confined. The riot was quelled in the early morning hours of September 23. On that day, several prisoners signed statements implicating Stidham as one of those participating in Donnell's murder. Stidham was returned to his cell on death row immediately after the riot was brought under control. At that time, the floor was covered with water and his straw tick was soaked. He slept in a sitting position on the commode.

On September 23, 24, 25 and 26, Stidham was questioned about twenty-five times in his cell and once in the classification room by prison guards and state patrolmen with respect to his part in the Donnell murder. He consistently denied that he was guilty. He was given little or no food or water during the four-day period. He wrote a letter to his family on one of the days asking them to get him counsel. He delivered the letter to prison authorities, but they failed to mail it.

On September 27, Stidham was taken from his cell and removed to the prison field house. He was again interrogated in a small hot room with his hands handcuffed behind his back in the presence of at least two armed highway patrolmen and four armed St. Louis police officers.[1] The questioning was persistent, but he continued to assert his innocence for about one-half hour. He then broke down and admitted that he had participated in Donnell's murder. He followed this oral admission with a written statement of guilt.

Stidham was then returned to another cell and held there for two more days with little or no food or water and without opportunity to see anyone from outside the prison. He was arraigned two days later without the benefit of counsel even though he requested one in open court.

Stidham was at no time advised of his right to remain silent or to have the assistance of counsel.[2]

The state argues on appeal that Stidham's claim for relief must be denied unless we accept his testimony that he was hung by his wrists and beaten. It cites Stidham's testimony that he confessed only after he was beaten for the proposition that no other conduct was

---

1. Stidham testified at trial that he was hung by his wrists to the ceiling and beaten by his interrogators. The interrogators testified to the contrary. We accept the fact-finder's determination that Stidham was neither beaten nor hung even though there is independent evidence in the record to support Stidham's version.

2. This statement of the undisputed facts is essentially the same as that adopted by the United States District Court. It found:

It is necessary to review the uncontroverted facts in order to determine this issue. The murder was committed on September 22, 1954 and Stidham confessed on September 27, 1954. He was questioned intermittently up until that time concerning his part in the murder. He had very little food and very little sleep. At no time during this period was he informed of his right to counsel or to remain silent. In fact, he asserts that an attempt to get an attorney was thwarted when the prison authorities refused to allow a letter to be mailed. On the 27th, Stidham was taken to the Athletic Building and questioned by a number of officers who had hand guns and riot guns in their possession. Stidham asserts that he was physically abused and rendered unconscious at this time, and these acts resulted in his confession. Before and after the interrogations Stidham was in solitary confinement and no visitors, including parents or priest were allowed to see him. Other uncontradicted facts indicated that Stidham was deprived of food for two days after his confession and that he lost 25 pounds during the period of interrogation.

He had consistently denied all involvement in the murder up until the time of his confession.

Stidham v. Swenson, *supra* at 328 F.Supp. 1295–1296.

A careful review of the record convinces us that there is a doubt as to whether Stidham lost twenty-five pounds during the period of interrogation. We, therefore, reject that finding. The additional facts that we find to be relevant to the question of voluntariness of the confession are the size and condition of the cell before and after the riot. Stidham's testimony on these matters was easily refutable by available government witnesses if not true.

coercive. We reject this reasoning. It is for this Court to determine whether under the totality of the circumstances the confession was an involuntary one, and we hold they were. *See* Brooks v. Florida, *supra*; Clewis v. Texas, *supra*; Davis v. North Carolina, *supra*; Townsend v. Henderson, 405 F.2d 324 (6th Cir. 1968).

> If a confession
>
> \* \* \* is the product of sustained pressure by the police it does not issue from a free choice. When a suspect speaks because he is overborne, it is immaterial whether he has been subjected to a physical or a mental ordeal. Eventual yielding to questioning under such circumstances is plainly the product of the suction process of interrogation and therefore the reverse of voluntary. \* \* \*

Watts v. Indiana, 338 U.S. 49, 53, 69 S. Ct. 1347, 1350, 93 L.Ed. 1801 (1949).

Here, the pressure on Stidham was sustained and unyielding. It included eighteen months of solitary confinement in subhuman conditions; persistent questioning by armed guards over a four-day period; deprivation of food and water over the same period; denial of an opportunity to have contact with counsel, family or friends; failure to advise as to the right to remain silent and the right to assistance of counsel; and a final interrogation by six heavily armed law officers in a remote field house. Contrary to the statement of the Missouri Supreme Court in State v. Stidham, *supra* at 449 S.W.2d at 643, there is not a scintilla of evidence that state witnesses had "categorically or implicitly refuted" Stidham's claims as outlined in this paragraph. We have scoured the record from beginning to end, as we are sure that Judge Collinson did before us, and are thoroughly satisfied that the circumstances were as stated. What we have then is not a question of credibility but a dispute over whether the actual circumstances considered in their totality were such as to render the confession an involuntary one. Judge Collinson believed they were not. We believe they were.

We recognize that Stidham had been in solitary confinement for twenty months before the riot, and that conditions in the cell were probably not much worse after the riot than before. But this neither changes the fact that these conditions were at all times subhuman nor excuses the failure of prison officials to give him adequate food and water and an opportunity to contact someone from the outside after he was put back in solitary confinement In the light of all of the circumstances and in view of the persistent questioning in the face of his repeated denials, it must have become painfully evident to Stidham that he must either confess or continue to be treated as an animal. The state's case in no way explains why a hardened criminal such as Stidham would figuratively sign his own death warrant by confessing to a murder committed in a prison, save through the testimony of the law enforcement officers who conducted the confrontation in the prison field house and who, as we have noted, testified that they did not beat Stidham or hang him by the arms. This testimony does not refute the evidence of motive as introduced by Stidham, showing the confession as bottomed upon coercion.

The state also argues that some of the testimony relied upon by Stidham to establish the involuntariness of his confession was not alluded to at his initial trial and was brought forth as an after thought for the first time in the post-conviction proceeding. The best answer to this contention is that the state had a clear opportunity to refute any new testimony and failed to do so.

As we read the record, the testimony at the post-conviction hearing developed more thoroughly the fact that the defendant had been deprived of nourishment during the four-day period prior to his confession. The state's only answer to this testimony was that the defendant did not complain of the absence of food or drink when he was brought to the

field house, and that he appeared to be in good health. It offered no direct testimony that Stidham was, in fact, given food or water during this period.

Stidham did testify for the first time at his *post-conviction* hearing that he wrote a letter to his family which the prison authorities failed to deliver. The state did not deny that a letter had been delivered to it, nor did it offer any testimony which would tend to show that the passage of years had made it impossible for it to adduce evidence on the point.

The question of Stidham's guilt or innocence is not now before us. We repeat that the issue is one of the voluntariness of a confession and we are unable to reach any conclusion other than that the defendant's confession was coerced.

The record would indicate that Stidham was not a model prisoner, and there is substantial testimony in the record indicating that he participated in the brutal killings; but these facts do not excuse the use of an extorted confession. We remain a government of laws, and those charged with law enforcement have a special responsibility to see that the guilty as well as the innocent are given the protection of the Constitution. If we depart from this principle, we deal the administration of justice a heavy blow.

The judgment of the District Court denying the petition for writ of habeas corpus is vacated and the case is remanded. On remand, the District Court will enter appropriate orders consistent with this opinion, allowing the state reasonable time in which to retry the appellant if it desires to do so.

GIBSON, Circuit Judge (dissenting).

I dissent. I believe the majority has made a grievous misapplication of the

law relating to the voluntariness of confessions to the facts of this case. This is not a case in which the "so-called facts and their constitutional significance [are] . . . so blended that they cannot be severed in consideration." Townsend v. Sain, 372 U.S. 293, 315, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963), *quoting* Rogers v. Richmond, 365 U.S. 534, 546, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). Petitioner's claims do not present a difficult or novel problem for decision. In such a case the district court can be reasonably certain that the state court would have granted relief if it had believed petitioner's allegations. Townsend v. Sain, *supra*, 372 U.S. at 315, 83 S.Ct. 745. This case is remarkably similar to La Vallee v. Delle Rose, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973), where the Supreme Court concluded:

> Here, not only is there no evidence that the state trier utilized the wrong standard, but there is every indication he applied the correct standards. His determination was made on the "totality of the circumstances" and, in this pre-Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), pre-Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), situation, the court also considered the facts that respondent was not warned of his rights to the assistance of counsel and against self-incrimination before confessing.

La Vallee v. Delle Rose, *supra*, 410 U.S. at 695, 93 S.Ct. at 1205.

The District Court properly determined that Stidham's confession was voluntary. It was thus bound to deny the petition. I would affirm its denial of relief.

As the Supreme Court has held in this case, the state procedure was adequate to determine petitioner's claim of involuntariness.[1] The correct standard,

---

1. The majority in its previous decision attempted to reverse Stidham's conviction for murder on, in my opinion, a hyper-technical ruling on the Missouri procedure of submitting the issue of the voluntariness of a confession. The Supreme Court reversed without deciding that issue, holding the post-conviction review on voluntariness was adequate. In discussing the State's contention of error in the majority's holding, the Supreme Court said:

> The issue, then, is not free from doubt, but it is evident that we need not decide it in this case, for the Court of Appeals

"the totality of the circumstances," was applied. The only permissible conclusion then is that the state court disbelieved petitioner's allegations of physical and mental coercion, as it surely would have granted relief if all his allegations were found to be true. Where the state court has by its finding of voluntariness indicated a partial or complete rejection of petitioner's testimony, I believe that the district court, and on appeal a court of appeals, is bound to deny the petition. *See*, United States ex rel. Delle Rose v. La Vallee, 468 F.2d 1288, 1290 (2d Cir. 1972), rev'd on other grounds, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973):

> Still * * * we cannot tell in this instance whether the New York courts credited Delle Rose's story of the circumstances surrounding his confession * * * or based their holding of voluntariness on a partial or complete rejection of his testimony, *in which event the district judge would have been bound to deny the petition*. (emphasis supplied).

The Supreme Court, in reversing, found that the state court, having applied the correct standard, could not have found the facts as petitioner portrayed them. Neither could the Missouri courts in our present case. The majority's approach appears to me to be a bald usurpation of power and a radical departure from prior cases in that it would deny the state courts the power to assess credibility or find the facts adverse to petitioner absent *direct* state evidence to the contrary.[2] As noted by

the Missouri Supreme Court on appeal of the denial of state post-conviction relief, State v. Stidham, 449 S.W.2d 634, 643 (Mo.1970):

> In any event all these witnesses, all produced by the state, categorically *or implicitly* refuted *all* of Stidham's claims of mistreatment, either physical or mental. (emphasis supplied).

The state contends that the state court could consider the fact that many of Stidham's allegations were first made in the Mo.Sup.Ct. Rule 27.26, V.A.M.R., proceedings, 13 years after the original trial, in assessing their credibility. It is no answer to this contention to say that the state had a clear opportunity to refute any new testimony and failed to do so. *Ante*, p. 481. First, this denies the trier of fact the ability to make a credibility determination absent *direct* proof to the contrary, and ignores the evidence that by implication refutes petitioner's allegations. Second, such statement is not warranted by the record.

Leaving aside the difficulty or impossibility of refuting certain of petitioner's claims 14 years after the time the confession was obtained, it is clear that the state was not apprised of many of petitioner's claims of coercion until his testimony at the Rule 27.26 hearing. Rule 27.26 "is designed to discover and adjudicate all claims for relief in one application and avoid successive motions by requiring motions to be in questionnaire form." State v. Stidham, 415 S. W.2d 297, 308 (Mo.1967). The pertinent parts of Stidham's 27.26 motion are set out below.[3] These show that no in-

---

erred in another respect that requires reversal of its judgment.
Stidham v. Swenson, 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972).

2. Even the dissent in LaVallee v. Delle Rose, *supra*, 410 U.S. at 700, 93 S.Ct. at 1208, recognized that a state court could properly reject testimony as incredible, without direct evidence to the contrary.
   "It is possible, of course, that the state court rejected all of respondent's testimony as incredible and therefore properly held the confessions voluntary."

3. "8. State concisely *all* grounds known to you for vacating, setting aside or correcting your conviction and sentence."
   Stidham's answer, as pertinent, was:
   "(b) the overwhelming evidence was that the statement was involuntary *and was the exclusive product* of coercion used and practiced upon movant by members of the Missouri Highway Patrol and St. Louis Police." (emphasis supplied).
   "9. State concisely and in the same order the facts which support each of the grounds set out in (8) * * *."

ference should be raised against the state for a failure to offer direct testimony rebutting certain of petitioner's assertions.

Two state trial judges had the opportunity to see and hear Stidham. Both determined the facts against him. On both occasions their determination was upheld by the Missouri Supreme Court. Although we are to make an independent determination on the ultimate issue of voluntariness, due regard for the co-equal responsibilities of the state courts in determining constitutional issues and a recognition of their superior ability to determine factual issues in this type of case where the state court has seen and heard the witnesses mandate that we accept their resolution of the facts against petitioner. The state courts employed a procedure acceptable under the due process clause; they found the facts against petitioner, and, applying the correct constitutional standard, determined his confession to be voluntary. Now, some twenty years after the events in question, the majority on a cold record determines that the facts are not as the state courts found them to be and upsets what I view as a valid conviction. This sorely points out the continuing need for some measure of finality in our criminal process if we are to restore public confidence in our system of criminal justice.

I would accept the several state courts' determinations that Stidham's confession was voluntary, and their resolution of the factual issues adverse to

his claim. However, as the majority has determined the facts in contradiction to the state's determination, I must register my disagreement with their conclusion.

The only factual issues in this record that the state courts could not have determined against Stidham are that he was in solitary confinement 20 months before his confession, that he was not advised of his right to remain silent and to the assistance of counsel, and that his confession was obtained as a result of interrogation September 27, 1954, at the prison field house.

Of these facts, only the failure to advise him of his right to remain silent and to the assistance of counsel is significant in determining the voluntariness of his confession, but this in itself is not enough to warrant reversal. Davis v. North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). These factors go "only to the weight to be given other evidence of actual coercion," and are "not in themselves coercive." Procunier v. Atchley, 400 U.S. 446, 453, 91 S.Ct. 485, 489, 27 L.Ed.2d 524 (1971).

Stidham was in solitary confinement from January, 1953, to July, 1954, in E–Hall and from July 12, 1954, to the date of his confession, September 27, 1954, on Death Row.[4] This was for an attempted escape in January, 1953. While we must recognize that placing a suspect or prisoner in solitary confinement is one of the circumstances the Su-

His answer was:
"1. (a) Petitioner was held incommunicado prior to making the confession.

(b) Petitioner was expressly denied the assistance of counsel prior to giving the aforesaid confession.

(c) Petitioner was protractedly and intensely interrogated twenty-six times by relays of officers during the five-day period before a confession was obtained.

(d) Petitioner was taken to a distant, lonely and isolated place where the confession was obtained.

(e) Petitioner's hands were handcuffed behind his back, and numerous officers armed with sidearms and riot guns had petitioner encircled until the moment a

confession was made, in the gruelling atmosphere on the hot day."

It can be seen that there is no claim regarding the alleged subhuman conditions of confinement, his alleged starvation or the wet mattress which figure so prominently in the majority's decision.

4. Stidham was moved from E-Hall to Death Row along with one of his co-defendants on the murder charge to break up and separate a group of prisoners because the warden felt there was trouble brewing. State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 301 (1956). The warden was evidently correct in his judgment.

preme Court has cited in support of a determination of involuntariness, Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643 (1967); Davis v. North Carolina, *supra,* the rationale of those decisions does not apply to Stidham's confinement. Stidham's solitary confinement largely antedated and was for a reason wholly unrelated to the murder investigation. The state did not remove him from his regular cell to "an oppressive hole" [5] in order to break down his resistance. We are not dealing, as the Court was in Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), with a person never before in trouble with the law, who, after being subject to custody with little or no contact with anyone but the police, might be particularly susceptible to this type of influence. Here, Stidham had successfully withstood solitary confinement for some 20 months; it marked no abrupt change from the conditions to which he had become accustomed. Further, even if Stidham's straw tick mattress was waterlogged [6] and he was forced to nap on a commode after being returned to his cell after the riot, this could surely be no more than excusable neglect on the part of the state officials. Stidham was an acknowledged leader of at least some of the 800 inmates who ran amok September 22, burning buildings and destroying property, among which were the water pipes that created the puddles of water on the floor now complained of. The inmates must surely

have recognized during the riot that this damage could not be immediately corrected. It must be recognized as a part of the totality of the circumstances that the state officials had more pressing duties in restoring order at the time they returned Stidham to his cell than checking to see that he had a dry mattress to sleep on. Considering this as a possible coercive influence is akin to voiding the confession of a prisoner charged with burning his mattress because he then couldn't sleep on the burnt mattress. I suppose that in the majority's view the State would be charged with coercion if the firelight from the burning buildings made it impossible for Stidham to sleep.

Also uncontroverted on this record is that the confession occurred during interrogation by six armed officers at the prison field house.[7] At his original trial the only evidence relied upon by Stidham to show coercion was his claim that he was twice hung from the ceiling of the field house by his wrists, the second time beaten with a corkball bat until he indicated his willingness to confess. He reiterated this claim at the 27.26 hearing. His account was directly contradicted by all the officers present during the questioning and has not been credited by any court.

Stidham's primary claim now, and his only claim at trial, was that his confession was involuntary because of the beating and torture. No court has credited his completely uncorroborated

---

5. Brooks v. Florida, *supra,* 389 U.S. at 412–413, 88 S.Ct. 541, 19 L.Ed.2d 643.

6. There is a conflict in the evidence as to whether Stidham's straw tick mattress was on the floor of his cell. At the original trial (T–212) it was testified that some of the cells had beds and some just straw tick on the floor. At the evidentiary hearing (EH–84), it was testified that Stidham had a bed in his cell. Stidham testified that it was on the floor.

7. All the officers were wearing sidearms and two carried riot guns. It is clear that this

was for their safety during the tense days following the riot and not as an attempt to influence petitioner to confess. The room petitioner was questioned in was approximately 20 by 30 feet in size, and although undoubtedly warm, the record shows a fan was in operation. The field house was located at the baseball diamond, within the prison wall, close to other prison buildings and a distance estimated at 200 yards to half a mile from Death Row. This field house was only one of several locations within the prison where prisoners were interrogated about the events of the riot.

claims.[8] Thus on the record this beating and torture did not occur. Of course, it does not necessarily follow that since these events did not occur, Stidham's will was not overborne by other pressures. However, as we are attempting to assess the subjective effect of the totality of the circumstances upon Stidham's will, his total reliance on the alleged abuse at the original trial and continued reliance on it at the 27.26 hearing would indicate that all these other factors, belatedly asserted by Stidham, did not "overbear his will" and cause him to involuntarily confess.

I do not believe the evidence in this record warrants crediting Stidham's allegations regarding other coercive influences. Accepting that the beating and torture did not occur, which the majority reservedly does, we must recognize that this casts serious doubt upon the credibility of his other claims. He alleges protracted and intense interroga-

tion by relays of officers.[9] At his original trial he explained that as the officers made their regular rounds, they would stop at his cell and ask him if he knew anything about the murder, and that each time he would deny it. At the evidentiary hearing 13 years later the events were considerably embellished. He now remembers that immediately upon his return to his cell these groups of officers began questioning him and making threats, even that they would shoot him if he didn't tell what he knew.

The majority states that Stidham was deprived of food and water over the four-day period between the end of the riot and his confession. *Ante*, p. 481. There is absolutely no evidence in the record that he was deprived of water during this time; his testimony was that he was without food or water during his confinement in O-Hall *after* his confession. He also, as an afterthought, alleged he was deprived of food the four

---

8. The majority's statement that there is some independent evidence in the record to support Stidham's version of the beating and torture is disturbing and inaccurate. Although stopping short of finding that this did occur, contrary to the testimony of the six state officers and the findings of the state courts who heard all the witnesses, this reluctance to accept the fact that the beating and torture did not occur manifests itself throughout the majority's opinion. Thus it is stated:

> The state's case in no way explains why a hardened criminal such as Stidham would figuratively sign his own death warrant by confessing to a murder committed in a prison, *save through the testimony of the law enforcement officers who conducted the confrontation in the prison field house and who, as we have noted, testified that they did not beat Stidham or hang him by the arms.*

*Ante,* p. 481 (emphasis supplied).

In recognizing that the state did present testimony explaining the confession, the majority manifests its rejection of the testimony of the officers regarding the events in the field house. Further, by apparently requiring the state to show a psychological motivation on Stidham's part for confessing, the majority would immunize hardened criminals from having any confession used against them, since surely they would not have confessed unless coerced.

9. It is appropriate to note here what I consider more than coincidental between petitioner's assertions and the language in certain of the Supreme Court cases dealing with confessions decided just prior to the evidentiary hearing in this case.

Justice Clark in his dissent in Davis v. North Carolina, *supra,* 384 U.S. at 755, 86 S. Ct. at 1771, noted "[t]here was no protracted grilling. Nor did the police officers operate in relays." Stidham alleges "[p]etitioner was protractedly and intensely interrogated twenty-six times by relays of officers * * *."

Stidham testified at the 27.26 hearing, "I was under complete control and domination of the prison officials of the Missouri Highway Patrol and St. Louis Policemen * * *." Note the language from Brooks v. Florida, *supra,* 389 U.S. at 414, 88 S.Ct. at 542. "For two full weeks he saw not one friendly face from outside the prison, but was completely under the control and domination of his jailers."

Stidham also testified, "They give you a real meager diet three times a day." *Brooks* mentions that the prisoner "was fed a 'restricted diet' * * * three times daily." *Brooks, supra* at 414, 88 S.Ct. at 542. And in *Davis,* while agreeing there was no showing of an attempt at starvation, the Court said, "[n]onetheless, the diet was extremely limited * * *." *Davis, supra,* 384 U.S. at 746, 86 S.Ct. at 1767.

days before his confession.[10] This testimony is inherently unbelievable. At his original trial in 1955 no mention was made of a deprivation of food these days, while he did testify that he was without food from the time he was returned to O-Hall *after* his confession (he stated approximately 12:45 p. m. the 27th) until 8:00 a. m. the 29th. It is incredible to believe that this matter slipped petitioner's mind or that he failed to recognize its importance when he testified with such specificity about his deprivations after the confession was obtained. The State also established that Stidham made no complaints to any of his questioners regarding this alleged lack of food, and the officers testified he appeared in good health. Although this is not *direct* testimony that he was given food and water, it surely is compelling enough to support the State's determination that its witnesses categorically or implicitly refuted his claimed deprivations.

Nor do I credit Stidham's claim that he was held incommunicado before his confession. The only evidence indicating that Stidham was denied access to anyone was his testimony that a Father Clark tried to visit him *after* his confession and was not allowed to do so. He did testify that Father Stevens talked with him on Death Row after the riot and *before* his confession. On cross-examination he could not recall when his last visit was before the riot. On direct examination he testified that no one had visited him in the approximately 18 months he was in solitary confinement in E–3, nor did he testify that anyone attempted to visit him *before* his confession and was denied access.

Stidham testified that before his confession he wrote a letter that the prison authorities did not mail. How did he know this? There is no indication in the record how he determined it was not mailed, or that this was known to him before his confession, the only time material to our inquiry. In light of his own testimony that state officials informed each prisoner that they could write a letter to inform relatives that they were safe after the riot, it is more reasonable to assume on this record that if Stidham did write a letter, it was mailed by prison officials.

This long-suffering case, with its many hearings before different state and federal courts, renders itself into an issue of credibility.[11] Yet on the issue of credibility, the majority totally ignores evidence by third parties that rather conclusively establishes petitioner's participation in the riot and murder. This evidence has a direct bearing upon Stidham's credibility. His trial testimony, maintained to the present, was that he had nothing to do with the riot and murder. Yet the evidence indicates his involvement in both. Stidham was a ringleader in the riot; a deliberate and concerted effort was made by the inmates to break through the three doors into Death Row to free him [12] so that he could lead them in their riotous pillaging of the institution and vicious

---

10. Defendant was asked to compare the conditions in O–Hall with those of his previous solitary confinement. He testified:

"Didn't have anything at all to eat in 'O' Hall. Didn't feed you anything. No water, didn't have no water. All it was was just a bare floor and as I recall the only thing I had was a pair of pants on, and as far as that goes, even after I was returned to my regular Death Row cell, after the riot had completed, I didn't have anything to eat at all till the day I went over to Jefferson City to Court."

11. The majority evades the issue of credibility by pretending it is not present. Although they recognize the substantial evidence of guilt, and Stidham's continued denial of involvement, they still attempt to portray Stidham as an innocent victim of the alleged coercive practices of the State of Missouri. That Stidham denied participation in the murder, that he alleged fictitious beating and torture, and that he alleged a 25 pound weight loss during his period of interrogation is ignored in crediting his other allegations, which are the only evidence in the entire record supporting his claims of coercion.

12. And once freed he was introduced to the inmates as their leader. He replied, "Well men, I am ready to work." Testimony of Witness Trout.

attacks on those inmates who had incurred their wrath.

Further, there was eyewitness testimony that Stidham participated in the murder. Trout personally saw Stidham enter the murdered inmate's cell and heard the cries for mercy. Creighton, who immediately prior to the murder had been attacked by the same group and only escaped a like fate by jamming his cell lock, identified Stidham as a participant. This evidence rather persuasively indicates that Stidham's credibility is poor.

In short, the majority is willing to accept all of the petitioner's unsupported allegations, while denying to the state the benefit of the contrary inferences arising from the evidence inconsistent with his version of the facts. All of these allegations of coercion came out at the evidentiary hearing 13 years after the trial. During the hearing at the original trial and again before the jury, no mention was made of these "facts" by the petitioner. If we are to preempt the state's fact-finding role, a course which I feel the majority has erroneously taken, we should not compound that error by requiring *direct* evidence to rebut unbelievable assertions from a petitioner so obviously lacking in credibility.

I would affirm the decision of the district court denying relief.

### ON PETITION FOR REHEARING EN BANC

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON and WEBSTER, Circuit Judges, en banc.

### PER CURIAM.

On March 28, 1974, a panel of this Court held that James Stidham's confession was coerced and, therefore, improperly received in evidence. Stidham v. Swenson, Slip Opinion No. 20,685. The panel directed that his state court conviction for murder be set aside and that he be released from confinement in the Missouri State Penitentiary unless he was retried within a reasonable period of time. Thereafter, the State of Missouri petitioned for a rehearing en banc. That petition was granted and the matter was reargued before the full Court.

A majority of the Court now decides that not all of the material facts were adequately developed at the state court hearing and that an evidentiary hearing should be held by the United States District Court to adequately develop all material facts. See, 28 U.S.C. § 2254(d)(3). The matter is, therefore, remanded to the United States District Court for the purpose of taking evidence and making specific findings with respect to:

(1) The size of the cells in which Stidham was held in solitary confinement from January, 1953, until September of 1954;

(2) The facilities available in said cells;

(3) The extent, if any, to which the cells were infested with cockroaches, rodents and pigeons;

(4) Whether the cells were or were not poorly ventilated;

(5) Whether Stidham was permitted to visit with family or friends during the time that he was held in solitary confinement;

(6) The extent, if any, to which Stidham was given food and water in the period between the prison riot and his confession;

(7) Whether Stidham was given an opportunity to rest during the period from the prison riot to his confession;

(8) Whether officials of the prison refused or neglected to mail a letter from Stidham to his family in which he requested that counsel be appointed for him in the period between the riot and his confession; and

(9) Such other matters as it may feel appropriate.

After evidence has been taken and specific findings made with respect to the above matters, the District Court

shall, on the basis of the entire record, redetermine whether the confession was voluntary or involuntary. Thereafter, the matter shall be resubmitted to this Court without further action of the parties.

GIBSON, Chief Judge, with whom STEPHENSON and WEBSTER, Circuit Judges, concur, dissenting.

I respectfully dissent. I do not agree with the majority's conclusion that the material facts were not adequately developed at the prior state court hearings. This conclusion flies in the teeth of the Supreme Court's holding in this case that the state proceedings were procedurally adequate and substantively acceptable. Swenson v. Stidham, 409 U.S. 224, 229–230, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972). Thus the state court's findings are entitled to a presumption of correctness with the burden being upon Stidham to establish by convincing evidence that the factual determination by the state court was erroneous. 28 U.S.C. § 2254(d); LaVallee v. Delle Rose, 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). The majority's conclusion would strip the state court findings of this presumption. This might be understandable had the determination come at some prior stage in this litigation; coming as it does now, after the case has been considered by the District Court, twice by panels of this court, and once by the Supreme Court, with no indication of the inadequacy of the facts developed in the state hearings, it defies understanding. Stidham, a state prisoner, is to have not merely his day in court but years in the federal courts engaged in a never-ending search for error.

As I have stated before,[1] this is a case where the District Court could be reasonably certain that the state court would have granted relief if it had believed Stidham's allegations. *Cf.* LaVallee v. Delle Rose, *supra* at 694–695, 93 S.Ct. 1203. The matter in question is whether the state court could be justified in rejecting Stidham's allegations of coercion. In the light of his continuing protestations of innocence in the face of the substantial evidence of his guilt exclusive of the confession; his continuing reliance on his testimony of beatings and torture directly contradicted by six state officers and not accepted by any court; his testimony of deprivations of food and water before his confession 13 years after the fact when at trial less than one year after the fact he testified with specificity in regard to deprivations occurring *after* the confession with no mention of these newly asserted deprivations; and his assertion of a weight loss of 25 pounds as a consequence of these deprivations, an assertion which, although uncontradicted in the record, even the previous panel majority could not accept, the record fully justifies the state court's rejection of his testimony.

Where the petitioner's testimony is rejected by the state court after a procedurally adequate and substantively acceptable hearing, we are bound to deny the petition for relief. *See* United States ex rel. LaVallee v. Delle Rose, 468 F.2d 1288, 1290 (2d Cir. 1972), rev'd on other grounds, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).[2]

The matters upon which the District Court is directed to make specific findings are in the main irrelevant and immaterial to a determination of the voluntariness of Stidham's confession. What has the size of his cell, in which he had been incarcerated for some 21 months, to do with the voluntariness of his confession? It obviously was not a tiger cell. What is material is that the

---

1. Stidham v. Swenson, No. 20,685 (8th Cir., filed March 28, 1974) (Slip op. at 9) (Gibson, J. dissenting).

2. This principle was recognized even in the dissent in LaVallee v. Delle Rose, *supra* 410 U.S. at 700, 93 S.Ct. at 1208.

It is possible, of course, that the state court rejected all of respondent's testimony as incredible and therefore properly held the confessions voluntary.

state courts' finding of voluntariness can only be viewed as a rejection of Stidham's testimony; this rejection is fully supported by the record of the state court proceedings, both the original trial and 27.26 hearing; and this record was made during hearings the Supreme Court has found to be procedurally adequate and substantively acceptable. As stated previously:

[D]ue regard for the co-equal responsibilities of the state courts in determining constitutional issues and a recognition of their superior ability in this type of case where the state court has seen and heard the witnesses mandate that we accept their resolution of the facts against petitioner.

Stidham v. Swenson, No. 20,685 (8th Cir., filed March 28, 1974) (Slip op. at 13) (Gibson, J. dissenting).

I view the state courts' proceedings as procedurally adequate and their findings substantively correct and would affirm the finding of the District Court, Stidham v. Swenson, 328 F.Supp. 1291 (W.D. Mo.1970), that Stidham's confession was voluntary without a remand for an evidentiary hearing.